**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Delbert W. WADSWORTH and Kurt W. Wadsworth, Defendants-Appellants.**

**Nos. 86–3194, 86–3195.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1987.

Decided Oct. 22, 1987.

Daniel L. Hawkley and Kim Lindquist, Boise, Idaho, for plaintiff-appellee.

Bryan K. Murray, Randall D. Schulthies, Pocatello, Idaho, for defendants-appellants.

Before FARRIS, ALARCON and WIGGINS, Circuit Judges.

ALARCON, Circuit Judge:

Delbert and Kurt Wadsworth appeal from the judgment of conviction for rescue of seized property in violation of 26 U.S.C. § 7212(b) (1982). Each appellant contends that he was forced to go to trial, over his objections, without representation or time to prepare a defense. In viewing Delbert Wadsworth's appeal, we must decide whether the failure of the court to inquire if the accused had the funds to hire an attorney, or, wished to waive the assistance of an attorney *at trial*, constituted a violation of his sixth amendment right to the representation of counsel. We conclude that the court's failure to make such inquiry was prejudicial error and reverse.

We reverse the judgment against Kurt Wadsworth because the district court abused its discretion in (1) dismissing appointed counsel, (2) denying the motion for a substitution of counsel, and (3) denying the motion for a continuance to prepare for trial.

In Part One of this opinion we discuss the issues and the facts pertinent thereto regarding Delbert Wadsworth's appeal. In Part Two we consider the relevant facts and analyze Kurt Wadsworth's claim of constitutional deprivation.

## PART ONE

 Delbert Wadsworth argues that the record is silent concerning whether he waived his right to representation by counsel. He also asserts that the record must reflect that the court personally conducted an examination of an unrepresented defendant to determine whether he can afford counsel and if he has made a knowing and intelligent decision to waive representation. We agree.

 Delbert Wadsworth appeared at his arraignment without counsel. The magistrate admonished him as follows:

> The Court: You have the right to be represented by an attorney at all stages of the proceedings. In the event you cannot afford to hire your attorney, the Court will appoint one for you.

The magistrate did not make any inquiry to determine whether the defendant was financially able to afford counsel. Following the court's advice concerning the right to counsel, the record reflects the following colloquy:

> The Court: I noticed that you are not appearing with an attorney today, do you desire to have the court appoint an attorney for you?
>
> Mr. Wadsworth: No.
>
> The Court: Okay. You're going to hire your own attorney?

Mr. Wadsworth: I don't know at this point.

The Court: Okay. But it is your desire to proceed with the rest of the hearing today without an attorney here, is that correct?

Mr. Wadsworth: Yes.

It is clear from this dialogue that Delbert did not expressly waive his right to representation by counsel *at trial.*

In *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the Supreme Court ruled: "We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Id.* at 37, 92 S.Ct. at 2012 (footnote omitted).

The Criminal Justice Act of 1964 (the Act), 18 U.S.C. § 3006A (1982 & Supp III 1985), sets forth the representation rights of persons "who are financially unable to obtain counsel during their defense in the federal criminal process." *United States v. Dangdee,* 608 F.2d 807, 809 (9th Cir. 1979). The Act provides in pertinent part:

In every criminal case in which the defendant is charged with a felony or a misdemeanor ..., the United States magistrate or the court shall advise the defendant that he has the right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel. Unless the defendant waives representation by counsel, the United States magistrate or the court, if satisfied after appropriate inquiry that the defendant is financially unable to obtain counsel, shall appoint counsel to represent him.

18 U.S.C. § 3006A(b).

■ The failure of the magistrate to inquire whether the defendant was financially able to afford counsel was a direct violation of the explicit requirements of section 3006A(b). Furthermore, because the defendant did not waive his right to representation by counsel, the magistrate was required to appoint counsel for him, notwithstanding his response that he did not know if he was going to hire an attorney, if, upon proper inquiry, it appeared that he could not afford counsel.

The record is silent as to whether Delbert Wadsworth appeared in the district court prior to the first day of trial. At oral argument, we were advised by counsel that he was present at the hearing conducted the day before trial on Kurt Wadsworth's motion for a substitution of counsel. The reporter's transcript reveals that the court did not address any remarks to Delbert Wadsworth nor did he or any attorney speak on his behalf.

The first reference to Delbert Wadsworth's presence in the district court appears in the reporter's transcript of the first day of trial. At the commencement of the trial in this matter, the court made the following statement to the jury:

I want the record to show that both attorneys for the Wadsworths advised the Court that they were unable to proceed because they did not get the information and cooperation from their clients. And the Court has determined that there has been a deliberate attempt to delay this matter; and there was an earlier cancellation of the trial date in order to give the Wadsworths more time, and the Court has determined that in the interests of justice this matter should proceed today.

■ The court's statement to the jury that Delbert Wadsworth had an attorney who advised the court that he was unable to proceed because he could not get information or cooperation from his client is unsupported by the record. The records of the district court reveal that no lawyer ever appeared as the attorney of record for Delbert Wadsworth. Furthermore, the record does not reflect that an attorney was relieved by the court of his duty to represent Delbert Wadsworth. If Delbert Wadsworth had an attorney who was relieved by the court of his professional responsibility to his client, no record was made for appellate review. Without such record, we cannot determine whether the court's decision to relieve counsel for Delbert Wadsworth, if it occurred, was consistent with the accused's right to be represented by counsel

at trial. The government has the duty to provide a defendant with a record of sufficient completeness so that his claim of constitutional error may be reviewed on appeal. *See Coppedge v. United States,* 369 U.S. 438, 446, 82 S.Ct. 917, 921, 8 L.Ed.2d 21 (1962).

■ There is no evidence in this record that the district court informed Delbert of his right to court appointed counsel or made any inquiry into Delbert's financial ability to retain an attorney. The failure of the district court to inquire of an unrepresented defendant whether he is financially unable to afford counsel is a violation of the duties imposed upon a trial court under section 3006A(b). Before proceeding with a criminal prosecution against an unrepresented defendant who has not expressly waived counsel "[t]he district court must first make adequate inquiry into the need for the appointment of counsel, with appropriate findings." *United States v. Moore,* 671 F.2d 139, 141 (5th Cir.1982), *cert. denied,* 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983). The failure to make such a determination in this matter resulted in the deprivation of Delbert Wadsworth's right to counsel at trial. It is undisputed that he did not have the funds to hire an attorney. Two days after the trial in this matter, the district court appointed counsel on appeal because of the defendant's indigency.

Delbert Wadsworth's further contention that we must reverse his conviction if the record does not affirmatively show that he knowingly and intelligently waived his right to counsel has long been recognized by the Supreme Court and the law of this circuit.

■ An indigent criminal defendant has an absolute right under the sixth amendment to be represented by counsel or to represent himself if he so chooses. *Faretta v. California,* 422 U.S. 806, 807, 818, 95 S.Ct. 2525, 2527, 2532, 45 L.Ed.2d 562 (1975); *United States v. Balough,* 820 F.2d 1485, 1487 (9th Cir.1987). A defendant choosing to represent himself, however, must knowingly and intelligently waive his right to counsel. *Faretta,* 422 U.S. at 835,

95 S.Ct. at 2541; *United States v. Rylander,* 714 F.2d 996, 1005 (9th Cir.1983), *cert. denied,* 467 U.S. 1209, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984). To establish a waiver of counsel, the record must show that an accused was offered counsel but intelligently and understandingly rejected the offer. *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962) ("[p]resuming waiver from a silent record is impermissible"); *see also United States v. Kennard,* 799 F.2d 556, 557 (9th Cir. 1986) (per curiam) (explicit waiver required for a second trial although defendant waived his right to counsel at his first trial).

■ We also have held that a defendant can knowingly and intelligently waive his right to counsel only after he is aware of the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation. *Rylander,* 714 F.2d at 1005 (quoting *United States v. Harris,* 683 F.2d 322, 324 (9th Cir.1982)). To make a proper record for appellate review on the question whether a waiver was knowing and intelligent, the district court should discuss each of the three elements with the defendant in open court. *United States v. Balough,* 820 F.2d 1485, 1488 (9th Cir.1987); *Rylander,* 714 F.2d at 1005. We have found, however, in limited and rare cases that automatic reversal is not required when the record as a whole reveals a knowing and intelligent waiver of the right to be represented by counsel. *Balough,* at 1488; *Rylander,* 714 F.2d at 1005.

Two days before trial, Delbert Wadsworth requested a continuance to retain counsel. The court did not rule on this motion. At no point in the proceedings in the district court, or before the magistrate, was Delbert Wadsworth informed of the nature of the charges against him, the possible penalties, and the dangers of self-representation. The government does not contend that Delbert Wadsworth's background, prior experience, or conduct demonstrate that he made a knowing and intelligent waiver of counsel. *See Balough,* slip op. at 1488–89 (the court may consider

a defendant's special knowledge and experience with the legal process in determining whether the defendant possessed a sufficient understanding of the disadvantages of self-representation). Furthermore, the record is silent concerning Delbert Wadsworth's prior experience with criminal matters. Based on its statement to the jury, the district court appears to have concluded that Delbert Wadsworth was guilty of dilatory tactics and bad faith interference with the efficient administration of justice because of lack of cooperation with his attorney. There is no evidence in the record that Delbert Wadsworth failed to cooperate with counsel or, as discussed above, that he was ever represented on this matter by any attorney. Because there is no proof in the record that Delbert Wadsworth engaged in dilatory tactics, we need not consider the government's contention that a defendant may constructively waive his constitutional rights by intentionally delaying his moment of truth before a trier of fact. *See United States v. Studley,* 783 F.2d 934, 938–39 (9th Cir.1986) (district court did not abuse its discretion in denying defendant's motion for a continuance on the eve of trial to obtain counsel where defendant "would not have obtained counsel even had the continuance been granted.").

■ During oral argument, the government claimed that Delbert Wadsworth waived his right to counsel by failing to make a request that the court appoint counsel. An indigent defendant's right to counsel under the sixth amendment is not contingent upon his request for appointed counsel. *See Carnley,* 369 U.S. at 513, 82 S.Ct. at 889; *United States v. Karr,* 742 F.2d 493, 495 (9th Cir.1984).

■ The denial of the right to counsel at trial is prejudicial per se. *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978); *Glasser v. United States,* 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). The failure to appoint counsel for this indigent defendant compels reversal.

## PART TWO

Kurt Wadsworth contends that the district court abused its discretion by refusing to grant his motion for a substitution of counsel because his court appointed attorney was incompetent and unprepared for trial and by denying his request for a continuance.

On July 22, the day before trial, Kurt Wadsworth filed a document entitled "Motion to dismiss court appointed council [sic]." The defendant stated therein that he moved to dismiss his court appointed counsel for the following reasons:

1. court appointed councel [sic] is incompetent to adquently [sic] effect defence [sic] of the accused.
2. court appointed councel [sic] has only read the statements of the I.R.S. agents, and had never discussed with the accused, the circumstances, and the reasons for the actions taken.
3. court appointed councel [sic] advised the accused that a pleas bargin [sic] would be in the best interest of the accused.
4. court appointed councel [sic] has failed to make affirmative pleading on the behalf of the accused.
5. court appointed council [sic] has made it appear that the accused wants to be rushed to judgement [sic].
6. court appointed councel [sic] has made it public knowledge of his reluctance to defend the accused.

The court heard these motions on the day they were filed. The record shows that Kurt Wadsworth, his attorney, Mr. Woolf, and the Assistant United States Attorney were present. The district court made a factual finding, after conducting a hearing on these motions, that Kurt Wadsworth had failed to cooperate with his attorney and intentionally attempted to delay the commencement of trial.

We review the district court's factual findings under the clearly erroneous standard. *United States v. McConney,* 728 F.2d 1195, 1200 n. 5 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Under the clearly erroneous standard of review, district court

findings of fact must be accepted as true unless upon review of the record we are left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Dollar Rent A Car of Washington, Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1374 (9th Cir.1985). We review the denial of a motion for the substitution of counsel and for a continuance of the trial date for abuse of discretion. *United States v. Wheat*, 813 F.2d 1399, 1401 (9th Cir.1987); *Studley*, 783 F.2d at 938.

The district court did not conduct an evidentiary hearing on Kurt Wadsworth's motion for a substitution of counsel and for a continuance. Instead, the court weighed the unsworn statements of court appointed counsel and the prosecutor against Kurt's argument in support of the motions. Thus, Woolf became an adverse "witness" against his client during these proceedings. Therefore, during the hearing on the competency of counsel motion, Kurt Wadsworth was not represented by an attorney whose efforts were dedicated solely to the effective representation of his client's interests at a critical hearing which resulted in the denial of representation at trial.

At the commencement of the proceeding concerning these motions, the defendant was told that the court would listen to anything he had to say. Kurt Wadsworth advised the court that he had been made aware two weeks earlier that Mr. Woolf had not prepared an adequate defense. He next told the court that he wished to make clear that he demanded "all my rights at all times and waive none of them at any time." At this point the court asked the defendant if he would be ready to proceed to trial the next day representing himself. Kurt Wadsworth responded that he would not be ready to go to trial for thirty days. The district court then stated:

I understand that the United States Attorney—You requested to know what was to be brought against you and he was willing to show that to you. And how much you were able to—

The Assistant United States Attorney interrupted the court at this time and stated that he had provided Kurt with "a copy of virtually our complete investigative file." The prosecutor advised the court that he was

not aware of any proviso in the Speedy Trial Act which allows a defendant to come into trial, just a few days before, and try to dismiss counsel on some ground which his counsel is not competent to represent him and thereby secure a delay. He's had counsel for some period.

The prosecutor then stated to the court that he had been contacted by Mr. Woolf after his appointment to discuss a "resolution of this matter short of trial." A settlement was discussed two weeks before the hearing date. However, Mr. Woolf informed him that "his client apparently no longer desired his services." The prosecutor also stated:

[W]hile I acknowledge that the defendant has the right to represent himself and refuse the assistance of counsel, I do not believe the exercise of that right should in any way justify a delay in the case.

This observation had no relationship to the issue presented to the court in Kurt Wadsworth's motion for a substitution of counsel and his request for a continuance. Kurt had not requested that he be permitted to exercise his right to represent himself nor did he refuse the assistance of counsel.

The prosecutor thereupon made a motion that the court appoint Mr. Woolf as standby counsel. The court did not rule on the government's motion at this time. Instead, the court asked Kurt Wadsworth to explain "[w]hat it is that you feel is inadequate about your counsel." Kurt replied that he believed that his attorney was "inadequate to defend me in this case" because his attorney had "never set [sic] me down and asked me the specific happenings of that day." Kurt also stated that his attorney's "beliefs" about the case came from the affidavits submitted by the IRS and "therefore I believe he has already taken the stand that I am guilty of the charge."

The court then inquired of Kurt Wadsworth whether "you think you have a defense that you did not retake the trailer?" The defendant advised the court that he was "not prepared to discuss these matters at this point, Your Honor." Kurt Wadsworth then repeated his complaint that "Woolf never has called me in and really set me down and asked me what my standing was and what my reasons were and if I felt I was guilty or innocent of the charge that day, what happened." The court then asked Kurt Wadsworth if he had discussed with Mr. Woolf the basis for his belief that his representation was inadequate or the things he ought to do that he had not done. The defendant responded that he had not done that because he had not had the opportunity to speak to Mr. Woolf.

The court then asked Mr. Woolf if he had the time to discuss these matters with his client. Mr. Woolf replied: "Your Honor, they've been discussed. That's a bunch of hooey." The court then asked Kurt to be seated and stated: "I'll hear from your counsel." The prosecutor again interrupted the proceedings and made the following statement:

> Your Honor, if I might, very quickly, I think the Court—and I guess Mr. Woolf maybe could make the same representation—but Mr. Woolf has in fact negotiated this defendant's case with the Government and has even successfully negotiated an offer from me that would enable his client to go into pretrial diversion. I don't think he has an obligation to invent a defense. And my experience with him has been the same as yours, and I would suggest, indeed, that his performance has been extremely efficient under the circumstances.

The court asked Mr. Woolf to present his "viewpoint on the matter."

Mr. Woolf informed the court that Kurt first came to his office prior to his appointment by the court as a private client. At that time they discussed the facts of the case "to a certain extent." Kurt Wadsworth brought a book to the office that "had something to do with one of these 'How to Attack the IRS.'" Mr. Woolf advised Kurt Wadsworth that he would "not in any respect, in my position, raise those types of defenses" because he did not believe that it was in his client's best interest.

Shortly thereafter, on May 2, 1986, Mr. Woolf was appointed by the court to represent Kurt Wadsworth. Mr. Woolf sent a letter to his client on May 12, 1986 requesting that he contact his attorney. Kurt Wadsworth contacted Mr. Woolf sometime after May 12, 1986. After receiving discovery materials, Mr. Woolf forwarded them to Kurt on June 9, 1986. In the same letter, Kurt Wadsworth was requested to come to Mr. Woolf's office to discuss the case. A second letter was sent on June 26, 1986 because Kurt Wadsworth had not responded to the letter posted June 9, 1986. Kurt Wadsworth went to Mr. Woolf's office on July 2, 1986.

Mr. Woolf asked his client to get statements from all his witnesses, including his father, Delbert Wadsworth, and to prepare a written summary of their recollection and his own version of the facts. Woolf also advised Kurt Wadsworth that the defense he intended to use at trial was that "Kurt acted because his father requested him to do so, and because of that request [Kurt] placed himself in a position that he didn't know what was going on." Kurt Wadsworth was also told that Mr. Woolf would "refuse, even if ordered by the Court ... [to raise] those other defenses."

On July 15 or July 16, Mr. Woolf called Kurt Wadsworth's home and told his wife that the prosecutor would dismiss the charge, recommend diversion, or reduce it to a misdemeanor "depending on the circumstances of the father."

Mr. Woolf also informed the court that "this is a defensible case" on the merits, but he would not now go out in the hall and discuss the case with Kurt Wadsworth because he would not put on a defense challenging the constitutionality of the Internal Revenue Service. Mr. Woolf advised the court that he had "not received one bit of cooperation from Kurt in any respect" and that he was not "now prepared to adequately go forward and defend this case."

Mr. Woolf explained his lack of preparation for trial as follows:

Well granted. I quit. You know, I just did nothing further. When I'm told I'm not wanted and I'm not going to represent him, I quit working on it. I had done some things in preparation, but I have not—you know, I did not prepare as I would have for a trial, and I just have not received the cooperation.

Counsel never sought permission of the court to cease representation of his client or preparation for trial when he "quit" because of his client's alleged lack of cooperation.

The court then questioned the defendant about the allegation in his motion to dismiss counsel, that Mr. Woolf had failed to answer the sworn affidavits of the agents. The court told him that he was misinformed because there was no procedure for answering the sworn affidavits of the agents. Kurt Wadsworth responded: "Well, let me explain that. Just in my studies, I found that if you don't object timely to an allegation of that manner, then it becomes truth." The court responded that the proper time to object to the affidavits would be at trial, adding that "there's no way you can become informed in a matter of weeks or months on how to conduct a defense in an action." The court further stated: "And you don't understand the procedure, you don't understand what's proper and what can be done and what can't."

The court then told the defendant that any deficiency in Mr. Woolf's representation was caused by a lack of cooperation, "not any fault of Mr. Woolf."

In denying the motion for a continuance, the court commented: "There's no justification for a continuance before this court." The court noted that May 12, 1986 was set aside for the trial of this matter, but it was continued and the court "lost that day of trial." The court stated to Kurt Wadsworth, "[t]here's some responsibility on your part" for the earlier continuance. The court did not explain the basis for the conclusion that the May 12, 1986 continuance was caused by the defendant's conduct. The record shows that the continuance was requested by Mr. Woolf because he needed time to prepare for trial as the result of not being appointed to represent Kurt Wadsworth until May 2, 1986.

Later in the proceedings the court stated: "[W]e will dismiss counsel if you wish." The court offered to ask Mr. Woolf to serve as standby counsel. Kurt had not up to this point indicated that he wished to dismiss counsel in order to represent himself in propria persona nor had he requested standby counsel.

Mr. Woolf told the court that he had a hearing that was set for trial the next day but stated, "I can appear down here as soon as I can." Woolf stated that he felt "uneasy ... participating in any respect.... because, well, quite frankly, I'm a little bitter."

The court responded as follows:

Well, I don't think I can compel you to represent a person who says he doesn't want you and doesn't think that you've done your job right. But the thing I can do is say you're going to trial tomorrow representing yourself *if you want to,* because I think that there has been a deliberate failure to cooperate with counsel with the intention of preventing this case from being tried when it was scheduled. And I think that's inappropriate.

(Emphasis added). Kurt objected and asked the court if "you're going to rush me to judgment without counsel." The district court replied:

I'm not rushing you. This case was filed in April. You've had two trial dates; you've known about it. You failed to cooperate with your counsel; you wait until the last day to have him removed. You knew these things all the time. I think it's a deliberate effect [sic] to delay the courts of justice.

I may be overruled. But as far as I'm concerned, you're going to trial tomorrow at nine-thirty, you and your father both, and we'll have this case tried. And if you don't like the result you can appeal to the Ninth Circuit.

Kurt then demanded that the court appoint counsel for him "at this time."

The court responded:

You've had counsel and he's been competent and capable. He has no obligation to present to the Court a theory of yours that is not a proper defense. And he has the right to determine the legal defense and the responsibility for it.

Later, the court added:

And if you're without counsel it's because of your own fault, your failure to look at that situation early, your failure to make your motions early, your failure to show any basis. I find no basis for dismissing this counsel.

The prosecutor renewed his request for the appointment of standby counsel "given the unavailability of Mr. Woolf." The court rejected this motion stating: "I think they've made their election."

■ Kurt Wadsworth argues that the district court abused its discretion in denying his request for the appointment of counsel following the court's order dismissing Mr. Woolf as the attorney of record. We agree.

■ The district court's finding that Kurt Wadsworth's conduct in filing a motion to replace appointed counsel was a deliberate, intentional delaying tactic finds no support in the record and is clearly erroneous. The court's finding that the defendant was solely responsible for any delay that would have resulted from a continuance is also clearly erroneous.

The continuance of the May 12, 1986 trial date was granted at Mr. Woolf's request because he was not prepared for trial due to the lateness of the appointment. There is no evidence in this record that Kurt Wadsworth was in any way responsible for the untimely appointment of counsel. Apparently, sometime before May 2, 1986, the court determined that he was an indigent and was entitled to appointed counsel. The court also concluded that ten days was insufficient time to prepare for a scheduled trial on May 12, 1986. There is no factual dispute concerning these findings. Accordingly, the facts simply do not support the court's determination that Kurt was responsible for this delay. The fact that Kurt Wadsworth is an indigent, and the inability of court appointed counsel to prepare for trial in ten days, cannot be reasonably construed as intentional delaying tactics.

The record does not support the court's finding that the late filing of the motion for a substitution of counsel was an intentional, bad faith tactic to delay trial. The record shows that Mr. Woolf was made aware two weeks before the trial date that Kurt Wadsworth was dissatisfied with counsel's representation. Kurt Wadsworth informed his lawyer that he would not accept a plea bargain that was conditioned upon what his father decided to do at trial. Counsel was also aware that his client disagreed on the theory of defense, i.e., that he had no knowledge of the facts concerning the legality of the rescue of the trailer. It is our view that the court's findings, that Kurt Wadsworth's refusal to enter a plea of guilty, and his disagreement with his appointed attorney's theory of defense, demonstrated intentional delaying tactics, are clearly erroneous. The sixth amendment to our Constitution guarantees a right to a trial by jury to every person accused of a crime. Insistence upon this right, however misguided or self destructive, cannot be reasonably construed as a delaying tactic, nor can it justify the denial of counsel or compelling an unrepresented defendant to go to trial unprepared.

It is equally clear that appointed counsel, and not his client, is in charge of the choice of trial tactics and the theory of defense. *See Henry v. Mississippi*, 379 U.S. 443, 451, 85 S.Ct. 564, 569, 13 L.Ed.2d 408 (1965) (counsel's deliberate choice of strategy is binding on his client). When it became apparent, two weeks before the trial date, that there was a disagreement regarding the theory of defense, Mr. Woolf, as the attorney of record, had limited but clear choices in carrying out his professional responsibility to his client in a competent manner.

First, counsel could have filed a timely motion for a substitution on behalf of his client so that the court could determine if the disagreement was based solely on the choice of trial tactics or the theory of de-

fense. Had this been done, the court could have advised the defendant that his attorney was in charge of the defense and denied the motion for a substitution. On the other hand, if the court determined that the disagreement had escalated to total breakdown in the attorney-client relationship, the court would have been required to dismiss counsel and appoint another attorney, after admonishing the defendant that the law did not permit an accused to control the theory of defense. No such motion was filed by Mr. Woolf.

Second, appointed counsel could have continued his preparation of the defense on what he stated was a "defensible theory" with the knowledge that if Kurt orally requested a substitution of counsel on the day of trial because of a disagreement on the theory of defense, the court would deny the motion and trial would proceed as scheduled. Instead, Kurt's appointed counsel ceased all trial preparations *and* agreed to the setting of another client's case for trial on the same date.

Kurt was compelled to file a motion for a substitution and a continuance because he was aware that his attorney had not prepared his defense and had taken no steps to inform the court that he was unprepared for trial or that his client lacked confidence in his attorney's competency.

In denying Kurt Wadsworth's right to representation at trial, the district court ignored appointed counsel's failure to take any steps to protect the court's trial calendar or to fulfill his responsibility as the attorney of record to file appropriate motions on behalf of his client. Instead, the trial judge inferred, from the defendant's conduct in bringing his conflict with his attorney to the court's attention, that the accused was engaging in deliberate delaying tactics to avoid trial. This inference was unreasonable. As recited above, there is no dispute that counsel failed to bring his client's disagreement on tactics to the court's attention, or to prepare for trial. After listening to the statements of counsel and the defendant, the district court stated that there was *no* legal basis for dismissing Woolf as attorney of record. Had the

court then inquired of Mr. Woolf whether he was ready for trial, counsel would have been ethically compelled to announce that he had deliberately ceased all preparation for trial because of the disagreement over tactics. Under these circumstances, due process concerns would have compelled the court to grant a continuance to permit counsel to prepare a defense. Had the court determined, instead, that Woolf's professed anger at his client because of the challenge to his competency, prevented him from fulfilling his professional responsibilities, it would have been required to appoint new counsel and continue the trial date. In short, a continuance of this matter would have been necessary even the defendant had not filed his motions. The court's finding that the filing of the motions was solely to delay trial is clearly erroneous.

We are also convinced that the proceeding conducted by the court on the defendant's motions resulted in the denial to the defendant of his right to due process and the right to counsel *at that hearing.* An accused is entitled to counsel at every critical stage of the proceedings against him. *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *United States v. Perez,* 769 F.2d 1336, 1338 (9th Cir.1985). There can be no question that these proceedings were critical. *See United States v. Wade,* 388 U.S. 218, 226, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967) (right to counsel exists where counsel's absence might derogate from the accused's right to a fair trial). At issue was the right of the defendant to have counsel at trial and time to prepare his defense.

The record shows that the district court relied heavily upon Mr. Woolf's claim of a lack of cooperation and hostility towards his client in ruling that the defendant must proceed to trial the next day without an attorney or time to prepare a defense. Thus, not only was the defendant unrepresented by counsel at this hearing, his attorney admitted that he was bitter about his client's lack of confidence in him and provided the most damaging evidence against his client's demand that the court substitute competent counsel for his defense.

Under the unusual circumstances of this case, the district court should have suspended the proceedings and appointed an attorney for the defendant at the competency of counsel hearing, as soon as it became apparent that Mr. Woolf had taken an adversary and antagonistic position on a matter concerning his client's right to counsel and to prepare for trial. *See Hudson v. Rushen,* 686 F.2d 826, 829 (9th Cir.1982) ("The trial court must take the time to conduct such necessary inquiry as might ease the defendant's dissatisfaction, distrust, and concern"), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983). Had counsel been appointed for this proceeding, he would have undoubtedly pointed out to the court that the defendant was not responsible for Woolf's failure to file a timely motion for a substitution or to prepare for trial. *See Coleman,* 399 U.S. at 9, 90 S.Ct. at 2003 (preliminary hearing was a critical state because the aid of counsel would have helped to avoid potential substantive prejudice to the defendant's rights).

Forcing an unprepared defendant to trial without counsel under these circumstances was an abuse of discretion. Because denial of counsel is prejudicial per se, the judgment of conviction against each appellant is REVERSED.

FARRIS, Circuit Judge, dissenting:

I respectfully dissent.

A newborn infant must be given nourishment. Nothing that the infant can do will justify the failure of a mother to meet its need. The majority would apparently apply the same standard to a judge in his duty to provide counsel for one accused of a crime. The Constitution does not require so much.

A timely request for counsel was made by Kurt Wadsworth. Competent counsel was provided in response to that request. A difficulty arose because Kurt wanted to dictate defense strategy. Counsel is not required to ignore legal precedent and put aside all notions of how to proceed with a legal defense in an effort to satisfy the wishes of a client who demands that he do

so. A court's proper use of sanctions preclude that course.

Unfortunately, these defendants have been labeled by some as "tax protesters." That label has no use in a court of law. America was built by "protesters." Their input should always be considered. It is legitimate for a court on appeal to be concerned about those rare instances when those who are identified as "protesters" (of any sort) are given less than their due at trial. That was not true here. The court did more than was required in an effort to satisfy all rights of the accused to the assistance of counsel. That burden having been met, we should affirm the convictions.

The record reflects that Kurt Wadsworth's purpose in asserting a claim of ineffective assistance of counsel was to delay the trial. According to his attorney, Mr. Woolf, Kurt failed for two months to cooperate in the preparation of his defense. He refused to meet with his counsel, failed to produce requested documents, and insisted on presenting frivolous defenses at trial. Mr. Woolf, a competent and experienced attorney, understandably declined to go to trial with Kurt's defenses, and proceeded instead to do what he could for his recalcitrant client. I would find that counsel's conduct under the circumstances was professionally reasonable and did not prejudice his client in any way. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). I would also find that Kurt's eleventh-hour motion to replace Mr. Woolf with a second court-appointed attorney was unjustified and could properly have given rise to the inference that the motion was brought for an improper motive. The district court did not abuse its discretion in refusing Kurt's request for a continuance.

We have recently entertained a similar claim that the district court erred in denying a criminal defendant effective representation at trial. *United States v. Kelm,* 827 F.2d 1319 (9th Cir.1987). We affirmed the conviction, stating:

When a criminal defendant's constitutional right to secure counsel of his choice conflicts with the trial judge's dis-

cretionary power to deny continuances, the reviewing court must balance several factors in determining whether the trial court's conduct was "fair and reasonable." Where a defendant's conduct is "dilatory and hinders the efficient administration of justice," a court may deny a continuance even if it results in the defendant's being unrepresented at trial. *Id.* at 7, 90 S.Ct. at 2002; *see United States v. Leavitt,* 608 F.2d 1290, 1293 (9th Cir. 1979). Because "[t]he record clearly demonstrate[d] that Kelm was manipulating his constitutional right to counsel in an effort to effect delay," *id.* at 8, 90 S.Ct. at 2002–03, we concluded that the district court properly treated defendant's antics as an effective waiver of his right to counsel.

*United States v. Hull,* 792 F.2d 941 (9th Cir.1986), is also instructive. There the trial court refused to grant a request for a continuance made the day before trial. The defendant brought the motion for the stated purpose of replacing the public defender with private counsel, but the district court found instead that the motion was made to delay trial. *Id.* at 943. We affirmed defendant's conviction, reasoning that the trial judge could properly consider the lateness of defendant's request and the competence of her attorney. *See id.* ("Hull had 'a very fine attorney' and ... her lack of confidence in him flowed from her lack of knowledge of legal proceedings"). *See also Relerford v. United States,* 309 F.2d 706, 708 (9th Cir.1962).

As in *Hull,* the timing of Kurt's request to replace Mr. Woolf, combined with Kurt's failure to cooperate and the absence in the record of any evidence of ineffective assistance of counsel, confirms the inference that the July 22nd motion "was motivated by a desire to delay." *Hull,* 792 F.2d at 943. Kurt certainly had the right to refuse to cooperate with his attorney and to present his own case. *Arnold v. United States,* 414 F.2d 1056, 1058 (9th Cir.1969). But this right carries with it no correlative right to impede the judicial process. Kurt's options were 1) to prepare his own defense or 2) to cooperate with his appointed counsel or 3) to timely request relief from the court. He did none of these. The

court was under no obligation to indulge him. *See Nunn v. Wilson,* 371 F.2d 113, 117 (9th Cir.1967) (holding that defendant has no right to repeated continuances to obtain new counsel when the facts demonstrate that defendant has "been playing footsie with the court").

The conclusion that Kurt intended to delay the trial is reinforced, in my view, by the evidence that Kurt knew several weeks before the trial date that Mr. Woolf would not present Kurt's desired defense. The majority acknowledges this fact but then states, without support, that it was Mr. Woolf's duty, not Kurt's, to file a prompt motion for substitution of counsel. The court also suggests that Woolf's failure to inform the court of his tactical disagreement with Kurt amounted to ineffective assistance of counsel. I disagree.

We must begin with the "strong presumption that a lawyer is competent and that presumption must be overcome with concrete evidence." *Smith v. Ylst,* 826 F.2d 872 (9th Cir.1987). Here, such evidence is wholly lacking. The fact that Mr. Woolf did not inform the court earlier of his client's obstinacy may be seen as beneficial to Kurt. It may also be inferred that Woolf thought he could convince his client to adopt a meritorious defense. Given the fact that it was clearly Kurt who intended the lawyer-client relationship to break down, he should have requested a substitution of attorneys earlier.

Moreover, the trial judge must be afforded discretion to assess the performance of defense counsel. *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). Woolf's performance conformed with the standard of the reasonably competent defense attorney, *Cooper v. Fitzharris,* 586 F.2d 1325 (en banc) (9th Cir.1978), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979), and Kurt was not entitled to have him replaced. The district court therefore acted within its discretion in ruling that Kurt's pattern of disruptive and dilatory behavior amounted to a constructive waiver of the right to counsel at trial.

In the case of Delbert Wadsworth, the issue of waiver of the right to counsel is more complicated. No counsel ever appeared on behalf of Delbert, and Delbert made no statements for the record between the date of his arraignment and his trial.

Delbert was informed at his arraignment of his right to representation. When asked at that time if he wished to represent himself, Delbert responded in the affirmative, waiving his right to counsel at the arraignment. He also rejected the magistrate's offer of court-appointed counsel. He never expressly waived his right to be represented by an attorney at later stages of the proceedings or stated that he intended to proceed *pro se* at trial but he also never requested counsel although he was advised of his rights. His conduct from the date of the arraignment until the day before trial therefore reflected a desire to proceed *pro se*. There is evidence, for example, that Delbert consulted privately with an attorney, although no attorney ever appeared in court on his behalf. This suggests that Delbert was both aware of his sixth amendment right to counsel and that he had taken charge of the conduct of his defense.

The question is whether such a waiver was knowing and intelligent. *See United States v. Bird,* 621 F.2d 989, 991 (9th Cir. 1980). In the absence of evidence of deliberate "ploys to gain time or effect delay," *Kelm, supra,* at 1322, there are two ways to satisfy the test for knowing and intelligent waiver. The "preferable procedure" is for the district court to discuss with the defendant in open court "the charges, the possible penalties, and the dangers of self-representation." *United States v. Harris,* 683 F.2d 322, 324 (9th Cir.1982). When such a discussion has not taken place, we have recognized a limited exception "when the record as a whole reveals a knowing and intelligent waiver." *United States v. Balough,* 820 F.2d 1485 (9th Cir.1987). The totality of the circumstances supports the district court's finding of waiver.

I would affirm.