No. 02-716

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 350

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JOHN L. GAZDA,

Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark, Cause No. CDC-2002-014,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks (argued), Attorney at Law, Helena, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Jennifer Anders,
Assistant Attorney General, Helena, Montana

Leo Gallagher (argued), Lewis and Clark County Attorney, Helena, Montana

Argued and Submitted: October 7, 2003

Decided: December 18, 2003

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     John L. Gazda (Gazda) appeals from his conviction of deliberate homicide, a felony in violation of § 45-5-102(1)(a), MCA, following a jury trial in the First Judicial District Court, Lewis and Clark County. We affirm.

BACKGROUND

¶2     On or about August 9, 2001, Gazda shot and killed Bronson Smith in a remote area outside of Craig, Montana. Subsequently, authorities arrested Gazda in Las Vegas, Nevada, on a federal warrant pursuant to a federal charge that Gazda, a felon, possessed a weapon and ammunition in violation of 18 U.S.C. § 922(g)(1). He was then transported back to the state of Montana, and remained in federal custody until the conclusion of his federal trial and sentencing. On April 16, 2002, a federal jury in the United States District Court convicted Gazda on both possession offenses.

¶3     On January 10, 2002, before trial on the federal charges, the State charged Gazda by Information with deliberate homicide, a felony in violation of § 45-5-102(1)(a), MCA. The charges alleged that Gazda purposely or knowingly caused the death of Bronson Smith.

¶4     On May 23, 2002, Gazda filed a motion to dismiss the state deliberate homicide charges on double jeopardy grounds. He argued that he was being placed twice in jeopardy by virtue of his conviction of the federal charges, noting that the prosecution had presented evidence in the federal trial that he had committed the homicide. In denying Gazda's motion, the District Court found that although evidence regarding possession of the rifle would be essentially the same as was presented in federal court, Gazda's courses of conduct in possessing the firearm and ammunition, elements of the federal charges, were clear and

2

distinct and did not arise out of the same transaction as the state charge.

¶5     On August 1 and 5, 2002, Gazda personally submitted handwritten letters to District Judge Thomas Honzel requesting appointment of new counsel.  He claimed he and his current counsel, Randi Hood, were completely unable to effectively communicate about motion filing and defense strategy.  He alleged that this total lack of communication created a conflict of interest and rendered Hood unable to adequately represent his interests.

¶6     In response to these allegations, the District Court conducted a hearing on August 6, 2002, regarding the initial inquiry to determine whether Gazda's complaint was substantial.  The court, after receiving testimony from both Gazda and Hood, concluded that Hood was providing effective assistance of counsel and denied Gazda's motion for appointment of new counsel.

¶7     On August 22, 2002, a Lewis and Clark County jury convicted Gazda of deliberate homicide.  It is from this conviction that Gazda appeals and raises the following issues on appeal:

¶8     1.  Whether Montana's double jeopardy statute bars a subsequent state deliberate homicide prosecution after a federal conviction of unlawful possession of a firearm and ammunition.

¶9     2.  Whether the District Court abused its discretion when it failed to appoint Gazda counsel during an initial inquiry addressing Gazda's request to remove appointed counsel and appoint new counsel.

STANDARD OF REVIEW

¶10    The grant or denial of a motion to dismiss in a criminal case is a question of law

3

which is reviewed *de novo* on appeal. *State v. Beanblossom*, 2002 MT 351, ¶ 9, 313 Mont. 394, ¶ 9, 61 P.3d 165, ¶ 9. This Court reviews denials of requests for the appointment of new counsel for abuse of discretion. *State v. Weaver*, 2001 MT 115, ¶ 18, 305 Mont. 315, ¶ 18, 28 P.3d 451, ¶ 18.

## DISCUSSION

## ISSUE ONE

¶11    Whether Montana's double jeopardy statute bars a subsequent state deliberate homicide prosecution after a federal conviction of unlawful possession of a firearm and ammunition.

¶12    We have previously stated that § 46-11-504, MCA, provides criminal defendants with greater protection against double jeopardy than the traditional double jeopardy "elements" test set forth by the United States Supreme Court in *Blockburger v. United States* (1932), 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306. *State v. Tadewaldt* (1996), 277 Mont. 261, 268, 922 P.2d 463, 467. Section 46-11-504, MCA, sets out in pertinent part:

> Former prosecution in another jurisdiction. When conduct constitutes an offense within the jurisdiction of any state or federal court, a prosecution in any jurisdiction is a bar to a subsequent prosecution in this state if: (1) the first prosecution resulted in an acquittal or in a conviction and the subsequent prosecution is based on an offense arising out of the same transaction . . . .

In *Tadewaldt*, this Court set forth a three-part test to determine whether a subsequent prosecution constitutes a double jeopardy violation pursuant to § 46-11-504, MCA. If the following factors are met, subsequent prosecution is barred under the terms of this statute:

> (1) a defendant's conduct constitutes an offense within the jurisdiction of the court where the first prosecution occurred and within the jurisdiction of the court where the subsequent prosecution is pursued;

4

(2) the first prosecution results in an acquittal or a conviction; and

(3) the subsequent prosecution is based on an offense arising out of the same transaction.

*Tadewaldt*, 277 Mont. at 264, 922 P.2d at 465. Due to the conjunctive nature of the statute, all three factors must be met in order to bar subsequent prosecution. Neither Gazda nor the State disputes that Gazda's federal conviction of unlawful possession of a firearm and ammunition satisfies factor two and, therefore, we need only consider factors one and three.

¶13 The District Court found that there was no concurrent jurisdiction, thus not satisfying the first factor set out by *Tadewaldt*, because the federal offense could not have been charged by the state of Montana, and the state offense could not have been charged by the federal government. Gazda argues that the District Court's analysis was too narrow and that § 46-11-504(1), MCA, only requires a defendant's conduct to constitute an offense in either state or federal jurisdiction. Gazda claims that his conduct on that day subjected him to charges in each jurisdiction, federal and state. He argues that he has already been prosecuted by the federal government for his conduct that occurred on August 9, 2001, and therefore, the jurisdiction prong has been met. Thus, the state prosecution is barred.

¶14 Conversely, the State argues that to satisfy the jurisdiction element of a double jeopardy claim, both jurisdictions must have authority to prosecute a defendant for the same conduct, regardless of whether a charge is actually brought. It contends that Gazda must establish that the same conduct subjected him to analogous potential charges in each jurisdiction, which he is unable to establish because the charges brought by each jurisdiction were based upon different conduct. Gazda's federal charges required proof that he knowingly, continuously and non-discretely possessed a firearm, while his state charges

5

required proof that he purposely or knowingly caused Smith's death. Relying on *State v. Sword* (1987), 229 Mont. 370, 747 P.2d 206, the State asserts that concurrent jurisdiction fails because state and federal courts lacked authority to prosecute equivalent offenses based on the same underlying conduct. We agree.

¶15 This Court has explicitly held that jurisdiction exists in both courts when both jurisdictions have authority to prosecute for the same offense. *Sword*, 229 Mont. at 373, 747 P.2d at 208. There is no suggestion that the United States could have charged Gazda with deliberate homicide, nor that the State could have charged Gazda with felon in possession, a federal statute with no comparable state statute. Therefore, this case does not meet factor one.

¶16 Gazda suggests in his reply brief that the legislature amended § 46-11-504(1), MCA, in 1997 and removed the words "concurrent jurisdiction" from the statute. In doing so, he maintains that the statute required "only that conduct constitute an offense within the jurisdiction of any state or federal court. It was no longer required that conduct constitute an offense within the *concurrent* jurisdiction of this state and some other jurisdiction." Thus, Gazda's conduct on that one day, August 9, 2001, subjected him to charges under federal jurisdiction, therefore the state could not prosecute him for his conduct on that same day.

¶17 The pertinent provision of the current statute reads "[w]hen conduct constitutes an offense within the jurisdiction of any state or federal court, a prosecution in any jurisdiction is a bar to a subsequent prosecution . . . ." Section 46-11-504, MCA. In our view, the amendment referred to by Gazda, does not change the meaning or rationale in the context of a double jeopardy analysis. The factual background of Gazda's prosecutions underscores this

6

point. The federal charge arose out of continuous conduct of possession of a firearm and ammunition, which is distinct from the conduct that the State relied upon for prosecution of deliberate homicide. Moreover, possession of the gun most likely occurred well before the day in question, and is not the same conduct as purposefully or knowingly causing one's death in a discrete incident. Therefore, we conclude the District Court correctly found that the first factor had not been met.

¶18 Next we turn to the third *Tadewaldt* factor. Gazda's federal prosecution would bar the subsequent state prosecution if the State based its prosecution upon an offense arising from the same transaction. Same transaction is defined as "conduct consisting of a series of acts or omissions that are motivated by a purpose to accomplish a criminal objective and that are necessary or incidental to the accomplishment of that objective . . . ." Section 46-1-202(23), MCA. This statutory definition applies to the "same transaction" factor in § 46-11-504, MCA. *See, e.g., Tadewaldt*, 277 Mont. at 265, 922 P.2d at 465; *Sword*, 229 Mont. at 374, 747 P.2d at 208; *State v. Zimmerman* (1977), 175 Mont. 179, 187, 573 P.2d 174, 179.

¶19 The District Court found that Gazda's courses of conduct in possession of the firearm and the alleged homicide were clear and distinct, therefore they did not arise out of the same transaction. Gazda claims the District Court erred because the possession of the gun, the federal charge, and the homicide, the state charge, could not be separated. He argues that the same transaction analysis is conduct based, and his conduct of both possessing a gun and shooting Smith on August 9, 2001, were one and the same, thus arising out of the same transaction.

¶20 We have said that offenses arise from the same transaction when a defendant's

7

underlying conduct of each prosecution is motivated by a purpose to accomplish the same criminal objective. *See Sword*, 229 Mont. at 374, 747 P.2d at 208-09. For instance, in *Sword*, the United States charged the defendant with violating the Endangered Species Act of 1973 when he killed a bear in an area where bear hunting was not permitted, and later pled guilty. Subsequently, the state of Montana charged him for making false statements on his application for a trophy license to transport the bear. *Sword*, 229 Mont. at 373-74, 747 P.2d at 208. Due to Sword's conduct identified in his federal charge of possessing, carrying and transporting a bear taken unlawfully, we concluded that his state charge of false statements was "motivated and necessary or at least incidental to the accomplishment of the criminal objective" of such conduct. *Sword*, 229 Mont. at 374, 747 P.2d at 209. Therefore, Sword's conduct fell within the definition of "same transaction," and double jeopardy barred the State from prosecuting Sword subsequent to the federal conviction. *Sword*, 229 Mont. at 374, 747 P.2d at 209.

¶21 Furthermore, we have concluded that the "same transaction" factor is not met when conduct charged in a subsequent prosecution is distinct from conduct charged in the initial prosecution. *Tadewaldt* is illustrative of this distinction. On August 10, 1994, authorities arrested Tadewaldt for driving under the influence of drugs (DUI). *Tadewaldt*, 277 Mont. at 263, 922 P.2d at 464. Immediately following the DUI arrest, the authorities found him in possession of several pills and charged him for possession on August 22, 1994. *Tadewaldt*, 277 Mont. at 263, 922 P.2d at 464. Eventually, he pled guilty to the DUI misdemeanor charge in Missoula Municipal Court. Subsequently, he moved to dismiss the possession charge claiming the possession charge arose out of the same transaction as the DUI, and as

8

such should be barred based upon § 46-11-504, MCA. *Tadewaldt*, 277 Mont. at 264, 922 P.2d at 464. When concluding that his criminal possession charge did not arise out of the same transaction as the DUI charge within the meaning of the statute, we said:

> The conduct underlying Tadewaldt's "criminal objective" of DUI--ingesting an unidentified substance and driving a vehicle while under the influence of that substance--is unrelated to his possession of dangerous drugs. Tadewaldt had completed his "criminal objective" of DUI and, later, Schedule III and IV drugs were found in his possession. The drugs forming the basis of the criminal possession charge had not been ingested and did not contribute to Tadewaldt's impairment. Thus, in statutory terms, Tadewaldt's conduct in possessing the dangerous drugs was not motivated by a purpose to accomplish the "criminal objective" of DUI, nor was it necessary or incidental to that "objective."

*Tadewaldt*, 277 Mont. at 267, 922 P.2d at 466.

¶22 Applying *Sword* and *Tadewaldt* to Gazda's conduct, we hold that the criminal objective of each charge is distinct from one another. Here, Gazda's federal charge alleged unlawful possession of a firearm and ammunition. The federal prosecution had to prove that Gazda possessed his .30-.30 rifle and ammunition continuous and non-discrete and that such possession was not "innocent" possession. Thus, the federal prosecution only pertained to whether Gazda's "criminal objective" was to knowingly and unlawfully possess his .30-.30 rifle and ammunition for a continuous period of time.

¶23 Furthermore, his possession of a gun was not motivated by a purpose to accomplish the "criminal objective" of a deliberate homicide, nor was it necessary or incidental to that objective. In contrast, the State had to demonstrate that Gazda purposefully or knowingly caused the death of another human being through deliberate homicide. Gazda's conduct of killing Smith was not motivated by unlawfully possessing a gun. The State even argues that

9

this criminal objective could have been accomplished with any gun, not only the one proven to be in Gazda's possession in the federal case. Gazda completed his criminal objective to unlawfully possess a firearm and ammunition well before he completed his criminal objective to purposefully or knowingly cause Smith's death.

¶24 We conclude that Gazda's conduct to support the criminal objective of possessing a firearm is distinct from that conduct that gives rise to the criminal objective of deliberate homicide; as such, it does not meet the definition of "same transaction" contained in § 46-1-202(23), MCA. In other words, the felon in possession of a firearm and ammunition charge did not arise out of the same transaction as the homicide charge within the meaning of § 46-11-504(1), MCA.

¶25 Based on these conclusions, we hold that the District Court correctly concluded that § 46-11-504(1), MCA, does not bar the prosecution for deliberate homicide in this case.

ISSUE TWO

¶26 Whether the District Court abused its discretion when it failed to appoint Gazda counsel during an initial inquiry addressing Gazda's request to remove appointed counsel and appoint new counsel.

¶27 While Gazda concedes that the District Court followed the required two-step process to consider his ineffective assistance complaint, he asserts that the August 6, 2002, initial inquiry constituted a critical stage of the criminal proceeding, therefore, he was entitled to different counsel during this hearing. He asserts that once the initial inquiry turned adversarial–when counsel responded to Gazda's complaints–the proceeding should have been halted and resumed with different appointed counsel present. Gazda urges this Court

10

to consider *United States v. Wadsworth* (9th Cir. 1987), 830 F.2d 1500, where the Ninth Circuit found there was a duty to appoint new counsel during an effectiveness of counsel hearing. Gazda further relies upon *State v. Finley* (1996), 276 Mont. 126, 915 P.2d 208, where this Court held the district court had erred by "failing to appoint an attorney for Finley at the post-trial hearing when it became apparent that counsel was taking an antagonistic position toward his client." *Finley*, 276 Mont. at 146, 915 P.2d at 220.

¶28　The State maintains that a hearing *on the merits* of an ineffective assistance claim may require appointing separate counsel, however, this Court has not required such appointment during the initial inquiry. Responding to Gazda's reliance on both *Wadsworth* and *Finley*, the State argues that this case is distinct because here, the judge determined that Gazda's complaints did not rise to the level of seemingly substantial after an initial hearing, whereas both *Wadsworth* and *Finley* contemplated representation during a hearing pertaining to the merits of effective assistance. The State asserts that the District Court did not err because it initially inquired into Gazda's complaint of ineffective assistance by hearing his allegations, allowing his appointed counsel to respond to Gazda's allegations, and then critically analyzing the allegations and response. The court did not find that his allegations arose to a seemingly substantial complaint, in accordance with procedure set out by *State v. Gallagher*, 1998 MT 70, 288 Mont. 180, 955 P.2d 1371. We agree with the State for the following reasons.

¶29　A defendant's right to effective assistance of counsel is guaranteed by Article II, Section 24 of the Montana Constitution and by the Sixth Amendment to the United States Constitution. *Gallagher*, ¶ 14. This right to counsel arises at every critical stage of the

11

proceedings against him. *Finley*, 276 Mont. at 144, 915 P.2d at 220. We have defined critical stage to mean "any step of the proceeding where there is potential substantial prejudice to the defendant." *State v. Bartlett* (1997), 282 Mont. 114, 126, 935 P.2d 1114, 1121. Therefore, this Court has consistently required that a district court must make an adequate initial inquiry into the nature of a defendant's complaint when presented with allegations of ineffective assistance of counsel to determine if those complaints are "seemingly substantial." *State v. Kellames*, 2002 MT 41, ¶ 22, 308 Mont. 347, ¶ 22, 43 P.3d 293, ¶ 22. If a defendant's complaint about his relationship with counsel rises to the level of being "seemingly substantial" and he requests that the court appoint substitute counsel, the court should conduct a hearing to address the merits of the defendant's claims and the request for substitution of counsel. *Gallagher*, ¶ 14.

¶30 We said in *State v. Weaver* (1996), 276 Mont. 505, 917 P.2d 437, that the threshold issue to determine whether a complaint is substantial is not whether counsel was ineffective, but rather whether the district court made an adequate inquiry into the defendant's claim. *Weaver*, 276 Mont. at 511, 917 P.2d at 441. This Court has recognized that an initial inquiry is adequate when the district court entertains the "defendant's factual complaints together with counsel's specific explanations addressing the complaints." *City of Billings v. Smith* (1997), 281 Mont. 133, 136-37, 932 P.2d 1058, 1060. Conversely, we have said that a district court's initial inquiry is inadequate when there is not even a cursory investigation into the defendant's complaint. *Gallagher*, ¶ 15.

¶31 As a preliminary matter, both the State and Gazda concede that the District Court correctly conducted the initial inquiry hearing in accordance with *Gallagher*. The transcripts

12

of the August 6, 2002, hearing clearly reflect that Gazda had the opportunity to voice his complaints regarding the lack of communication between him and his counsel. Furthermore, Hood responded to these complaints. The transcript is replete with Judge Honzel's analysis of the testimony before him at the August 6, 2002, hearing. We conclude that Judge Honzel properly exercised his discretion when he denied Gazda another lawyer.

¶32 Nevertheless, Gazda requests that this Court should require the appointment of additional counsel during the initial inquiry. He urges this Court to consider this initial inquiry as a "critical stage." To further his argument, Gazda relies on *United States v. Gonzalez* (9th Cir. 1997), 113 F.3d 1026, and suggests that the District Court created a conflict between himself and his counsel when it questioned defense counsel in Gazda's presence in open court. In *Gonzalez*, the court said that the district court had created a conflict between defendant and counsel when it questioned counsel in open court, during a sentencing hearing. Here, the District Court questioned defense counsel during an initial inquiry, not a hearing on the merits of effective assistance of counsel. We decline to accept this invitation and continue to believe that the critical stage in these proceedings begins with the actual hearing on the merits of the claim of ineffective assistance of counsel. *See, e.g., Kellames*, ¶ 22; *Gallagher*, ¶ 26; *Finley*, 276 Mont. at 145-46, 915 P.2d at 220. The initial inquiry only serves to establish whether a defendant has a substantial claim; it is not a hearing on the merits of that claim.

¶33 Therefore, we hold that the District Court did not abuse its discretion when it failed to appoint Gazda counsel during the initial inquiry addressing Gazda's request to remove appointed counsel and appoint new counsel. Affirm.

13

/S/ JIM REGNIER

We Concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE

Chief Justice Karla M. Gray, specially concurring.

¶34    I agree with the Court's opinion on Issue One.  I also concur in the result the Court reaches on Issue Two, but write separately to express my concern about the procedure used by the District Court--and approved by this Court--in hearing Gazda's request to remove appointed counsel and appoint new counsel.

¶35    It appears to me that we have diverging lines of authority on matters relating to the appropriate scope of a trial court's initial inquiry into a defendant's motion to remove appointed counsel.  The first line of authority suggests, as does the Court's opinion here, that a court may hear from defense counsel at the initial "seemingly substantial" inquiry on a request to remove appointed counsel.  *See Kellames*, ¶¶ 23-27; *Gallagher*, ¶ 15; *City of Billings*, 281 Mont. at 136-37, 932 P.2d at 1060.  Other authority suggests the process for dealing with such a request is a clearly distinct two-part test:  (1) an initial inquiry into the defendant's allegation, after which the district court makes a determination whether the complaints are seemingly substantial; and (2) where a seemingly substantial complaint is found, new counsel is appointed for a hearing on the merits.  *See Finley*, 276 Mont. at 145-46, 915 P.2d at 220.  In my view, the  latter approach of delaying counsel's response to such a motion until the hearing on the merits of a seemingly substantial complaint is far preferable.

¶36    The approach used in this case, in which counsel actually responds to the complaints at the initial inquiry, is troubling to me.  "Responding" is essentially--at least in most cases--

15

disagreeing with one's client. At the moment counsel does so, the defendant is both unrepresented and prejudiced by having counsel testify against him or her. Indeed, we said as much in *Finley*: "Finley's right to counsel attached at the post-trial hearing in which the District Court asked him to explain his complaints and then allowed his counsel to take the stand and rebut Finley's allegations." Moreover, "[i]n effect, Finley was without counsel at this point in the proceedings because his own attorney testified against him." *See Finley*, 276 Mont. at 145, 915 P.2d at 220.

¶37 To the extent our cases suggest defense counsel may testify in response at the initial inquiry on a request for appointment of new counsel, I submit they invite serious conflict-of-interest and denial-of-the-right-to-representation questions. In my view, any response by appointed counsel to a request for appointment of new counsel must be delayed until <u>after</u> the court has made a seemingly substantial determination and appointed new counsel to represent the defendant in a hearing on the merits.

¶38 Nevertheless, I conclude the second approach would result in an "error, but harmless" resolution in this case, because the issue between Gazda and his attorney related to the motion to dismiss on double jeopardy grounds. Under these facts and the Court's opinion on Issue One, Gazda's counsel could not have prevailed on such a motion and, consequently, no prejudice resulted. For that reason, I concur with the result reached by the Court on Issue Two.

/S/ KARLA M. GRAY

16