**Ronald SMITH, Petitioner,**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 5, 1995.

Decided June 15, 1995.

---

**3.** Because of our disposition of this matter, it is not necessary to address the other issues raised

by APSCUF.

John C. Armstrong, Asst. Public Defender, for petitioner.

Arthur R. Thomas, Asst. Chief Counsel, for respondent.

Before COLINS, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

PELLEGRINI, Judge.

Ronald Smith (Parolee) appeals from an order of the Pennsylvania Board of Probation and Parole (Board) denying Parolee's administrative appeal of a parole revocation decision.

While on parole, Parolee was charged with three technical parole violations and a new arrest.[1] Although the new criminal charges were dismissed, a violation hearing was held, at which Parolee admitted to committing the three parole violations. Consequently, the Board found Parolee delinquent, revoked his parole and recommitted Parolee to serve nine months backtime.

█ Parolee, acting *pro se*, petitioned the Board for administrative review of the Board's order, alleging due process violations. On March 16, 1994, the Board denied that petition, and Parolee now appeals to this court,[2] again asserting a violation of his constitutional rights.

█ Because it is jurisdictional, we must initially determine whether Parolee's Petition for Review should be dismissed as untimely filed. Pursuant to Pa.R.A.P. 1512(a)(1), a petition for review from a Board order must be filed with this court within thirty days after the order's entry.[3] On April 14, 1994,

1. The Board charged Parolee with: (1) failing to report to his parole agent as instructed; (2) moving from his approved residence; and (3) failing to report his arrest to the Board.

2. Our scope of review is limited to determining whether the necessary factual findings are supported by substantial evidence in the record, whether the parolee's constitutional rights were violated, or whether an error of law was committed. *Lanzetta v. Board of Probation and Parole*, 130 Pa.Commonwealth Ct. 312, 568 A.2d 283 (1989). On review, Parolee asserts that his constitutional rights were violated.

3. Pa.R.A.P. 1512(a)(1) provides:

(a) **Appeals Authorized by Law.** Except as otherwise prescribed by Subsection (b) of this rule:
(1) A petition for review of a quasijudicial order, or an order appealable under 42 Pa.C.S. § 763(b) (awards of arbitrators) or under any other provision of law, shall be filed with the

Parolee acquired a Department of Corrections Form DC–138A "Cash Slip."[4] The cash slip indicates that on that date the Department of Corrections charged Parolee postage for mail sent to the Prothonotary of the Philadelphia Court of Common Pleas by first class mail.[5] On April 14, 1994, within this thirty day period, Parolee purportedly placed the petition for review in the mailbox located in the State Correctional Institution at Graterford. On April 20, 1994, the Clerk of Quarter Sessions of the Philadelphia Court of Common Pleas stamped the petition as received and transferred it to the Philadelphia Office of our Superior Court.[6] On April 27, 1994, the Superior Court transferred the petition to this court, which our prothonotary stamped as received on May 2, 1994.

By an order dated May 5, 1994, we held that the petition was untimely filed and dismissed Parolee's appeal. However, Parolee subsequently filed a letter in this court requesting reinstatement of the petition. Parolee maintained that the cash slip he received from the Department of Corrections constituted sufficient proof that he mailed his petition prior to the expiration of the thirty day appeal period, thus securing an appeal date of April 14, 1994. See Pa.R.A.P. 1514(a);[7] Sheets v. Department of Public Welfare, 84 Pa.Commonwealth Ct. 388, 479 A.2d 80 (1984).

By an order dated June 3, 1994, this court reinstated the Petition for Review and directed both parties to file briefs addressing not only the merits of the appeal, but also the applicability of Turner v. Board of Probation and Parole, 137 Pa.Commonwealth Ct. 609, 587 A.2d 48 (1991), to this case.

In Turner, we refused to adopt the United States Supreme Court's ruling in Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). In Houston, the Supreme Court, interpreting the filing of appeals under the Federal Rules of Appellate Procedure, held that a pro se prisoner's notice of appeal is "filed" at the moment the prisoner delivers the notice to prison authorities for forwarding to the district court.[8] In

---

prothonotary of the appellate court within 30 days after the entry of the order.

4. We note further that the Department of Corrections maintains rules governing an inmate's mail privileges. Those rules include the handling of certified and registered mail:

> 1. Each institution will establish procedures in cooperation with the local U.S. Postmaster for the processing of certified or registered mail.
> 2. Determination of mail to be sent by these methods will be the responsibility of the inmate.
> 3. The inmate must have funds available in his personal account and an approved cash slip for such postage payment in order to send mail certified or registered.

Commonwealth of Pennsylvania, Department of Corrections, Inmate Mail Privileges, DC–ADM 803 Administrative Directive, § V(C)(1)–(3). According to these rules, an inmate can only utilize U.S. Postal Forms 3817 or 3800 if he has funds available in his personal account.

5. The envelope containing the petition apparently was discarded and, therefore, was never made part of the record.

6. Although Parolee erroneously sent the Petition to the Philadelphia Court of Common Pleas, the date of filing remains April 20, 1994. Pa.R.A.P. 751; Cudo v. Hallstead Foundry, Inc., 517 Pa. 553, 539 A.2d 792 (1988) (Nix, C.J., concurring).

7. Pa.R.A.P. 1514(a) (emphasis added) provides in pertinent part:

> (a) **Filing With the Prothonotary.** The petition for review, with proof of service required by Subdivision (c) of this rule, shall be filed with the prothonotary of the appellate court. If the petition for review is transmitted to the prothonotary by means of first class mail, the petition shall be deemed received by the prothonotary for the purposes of Rule 121(a) (filing) on the date deposited in the United States mail, as shown on a U.S. Postal Service Form 3817 certificate of mailing. The certificate of mailing shall show the docket number of the matter in the government unit and shall be either enclosed with the petition or separately mailed to the prothonotary....

8. Since the Court's decision in Houston, the Federal Rules of Appellate Procedure have changed and now specifically provide for appeals by an inmate confined in a correctional institution:

> If an inmate confined in an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely filed if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a notarized statement or by a declaration (in compliance with 28 U.S.C. § 1746) setting forth the date of deposit and stating that first-class postage has been prepaid....

Fed.R.A.P. 4(c). This federal rule is substantially different from Pennsylvania's parallel rule. See Pa.R.A.P. 1514(a).

declining to follow *Houston,* we noted that because an incarcerated petitioner is entitled to counsel, *Bronson v. Board of Probation and Parole,* 491 Pa. 549, 421 A.2d 1021 (1980), *cert. denied,* 450 U.S. 1050, 101 S.Ct. 1771, 68 L.Ed.2d 247 (1981), he has access to someone who is capable of filing his appeal in accordance with our appellate rules of procedure, and that, if he chose not to do so, there were certain adverse effects including having his appointed counsel file his appeal for him. The court in *Turner* specifically held:

> The fact that [the parolee] here chose not to avail himself of such assistance is his own doing. And, we are not inclined to encourage incarcerated litigants to proceed *pro se* by holding that more lenient rules for filing deadlines should be applied to them. Finally, even if this Court wished to follow *Houston,* it has no authority to adopt a rule which is in direct contravention with Pa.R.A.P. 1514, a rule promulgated by our own Pennsylvania Supreme Court. Any such revision of that rule would have to come from the court which promulgated it.

*Turner,* 137 Pa.Commonwealth Ct. at 611, 587 A.2d at 49. Parolee asks us to overrule *Turner* and not apply the provisions of Pa. R.A.P. 1514 to incarcerated prisoners.

■ Pa.R.A.P. 1514(a) of the Pennsylvania Rules of Appellate Procedure specifically provides that an individual transmitting a petition for review by mail can secure as a filing date the date that the petition is deposited in the mail, "as shown on a U.S. Postal Service Form 3817 certificate of mailing." Even though the Rule is that the date of mailing must be confirmed by a Postal Form 3817, we have accepted a properly postmarked U.S. Postal Form 3800 (receipt of certified mail) because other than form name it is its functional equivalent. *Sheets.*

■ To have the mailing date serve as the date of filing, Pa.R.A.P. 1514(a) requires an Appellant to meet the following conditions:

1. The petition for review delivered to the prothonotary's office must be accompanied by U.S. Postal Service Form 3817 or 3800, or the form may be separately mailed to the prothonotary.

2. The postal form must contain the docket number of the matter in the governmental unit.

3. The postal form must be date stamped by the post office.

If these conditions are not met, the petition for review is considered filed on the date it is actually received by the Prothonotary. *See* Darlington, McKeon, Schuckers, Brown, *Pennsylvania Appellate Practice,* 2d ed., § 1514.2.

Parolee in effect contends that the Department of Corrections Form DC–138A "Cash Slip," signed by a Department of Corrections' official, is the functional equivalent of Postal Proof of service forms and that because the "Cash Slip" shows that the Parolee mailed his petition for review within the thirty day period to the Philadelphia Court of Quarter Session Prothonotary. As its functional equivalent he contends that this is sufficient proof to indicate his date of filing in accordance with Pa.R.A.P. 1514(a).

■ Initially we should point out that even if the information contained on the cash slip was on a Postal Form 3817 instead, it would be still be insufficient to preserve the filing date. The cash slip does not establish that anything was mailed, only that money was charged to mail something. It is also insufficient because the cash slip neither contains the docket number of the governmental unit nor the date that it was mailed to the prothonotary's office with the appeal. Otherwise, to hold that the cash slip preserves the time for appeal mailing would establish a less restrictive method than if the Appellant used the postal form provided for in the Rule to evidence a mailing date.

More important, as we stated in *Turner,* we have no authority to permit the taking of an appeal in direct contravention with Pa. R.A.P. 1514, a rule promulgated by our own Pennsylvania Supreme Court. Pa.R.A.P. 1514 requires the use of a Postal Form because the courts can be assured of the regularity of the process in certifying the date of mailing. Even though the cash slip is issued by the correctional facility, and even if we could be assured that these slips were issued by non-prisoners, the cash slip is still not a

Postal Form as required by the Rule. Not being a postal form we cannot accept it as proof of mailing for purposes of Pa.R.A.P. 1514.

■ This result is no different than if we received a petition delivered by one of the private entities that have entered the express delivery business. Those entities have forms recording when items were received and form their computerized records as to where it went through its processing centers. Even if one of those companies delivers one day past the time for filing, it is unacceptable under Pa.R.A.P. 1514(a) to preserve the filing date, because the forms are not postal forms and those services are not the Postal Service. While those delivery services may have the regularity that is needed to confirm date of mailing, and there may be other acceptable forms of proving mailing, to accept these types of proofs of mailing the Rule would have to be amended by our Supreme Court.

Even if the "Cash Slip" is not sufficient to establish the time of his appeal, Parolee contends that the appeal should be considered timely filed under our Supreme Court's decision in *Miller v. Unemployment Compensation Board of Review*, 505 Pa. 8, 476 A.2d 364 (1984). *Miller* is a very narrow exception from the Rule that a petition for review will be considered filed when received by the prothonotary's office unless there is a postal form evidencing mailing. It is limited to its exact facts. In *Miller*, a petition for review was sent by certified mail, return receipt requested. While the petition arrived past the time for filing in our prothonotary's office, it was considered timely filed because working backwards from the time it was received by our prothonotary, it was received the next business day after the time for filing had elapsed. Because it would have been impossible for the petition for review not to be mailed within the time for taking an appeal, our Supreme Court held that it was timely filed.

■ Here we do not have that assurance working back from the time Parolee's petition was stamped as received by the Clerk of Quarter Session Prothonotary of the Philadelphia Court of Common Pleas that it was timely filed. While the cash slip indicates that Parolee was charged with postage April 14, 1994, the last day for Parolee to file his appeal was Friday, April 15, 1994, yet it was not stamped as received until Wednesday, April 20, 1994. Unlike in *Miller*, it is not impossible that Parolee's petition for review was mailed on Monday, April 18, 1995 or Tuesday April 19, 1994, outside the time for appeal, and still be received in Philadelphia on April 20. More important, the petition for review was not received the next business day by the prothonotary as required by the *Miller* exception.

Because Parolee's Petition for Review was filed out of time, it must be quashed.

### ORDER

AND NOW, this 15th day of June, 1995, Petitioner's Petition for Review is quashed.

FRIEDMAN, Judge, dissenting.

Because I believe that Ronald Smith's (Parolee) cash slip here is sufficient to evince the date of mailing of his petition for review, I must dissent.

As the majority points out, our rules of appellate procedure specifically provide that a petition for review shall be deemed filed on the date the petition is deposited in the mail, "as shown on a U.S. Postal Service Form 3817 certificate of mailing." Pa.R.A.P. 1514(a). However, in *Sheets v. Department of Public Welfare*, 84 Pa.Commonwealth Ct. 388, 479 A.2d 80 (1984), we indicated that although Pa.R.A.P. 1514(a) specifically refers to the use of Form 3817, we would accept a properly postmarked U.S. Postal Form 3800 (receipt of certified mail) to evince the date of mailing of a petition for review. By doing so, we adopted a less restrictive interpretation of the appellate rules of procedure to enable an individual to secure a date for filing within the thirty day period by means of other duly executed forms that positively show the date an individual mails a petition for review. In fact, in *Miller v. Unemployment Compensation Board of Review*, 505 Pa. 8, 476 A.2d 364 (1984), our Supreme Court held that despite a petitioner's failure to use Form 3817,

[t]he periods of time set by the General Assembly for filing appeals are jurisdictional and efficient court administration requires rules permitting summary determination of whether these requirements have been met. Nevertheless, adherence to such rules prescribing the only evidence of timely mailing which will be acceptable should not result in dismissal if timeliness can be determined by reference to the internal records of the court, and petitioner's counsel can bring the relevant facts and records which show timeliness to the court's attention....

*Id.* at 11, 476 A.2d at 365. That is precisely what presentation of Parolee's cash slip does here and, thus, I would accept it as the functional equivalent of a postal proof of service form.

I am aware of the Department of Corrections' rules governing an inmate's mail privileges. Commonwealth of Pennsylvania, Department of Corrections, Inmate Mail Privileges, DC–ADM 803 Administrative Directive, § V(C)(1)–(3). Nevertheless, according to these rules, an inmate can only utilize U.S. Postal Forms 3817 or 3800 if he has funds available in his personal account. However, at oral argument, neither party could tell this court whether Parolee had sufficient funds to acquire those forms or even if those forms were available at Graterford.

In *Turner v. Board of Probation and Parole,* 137 Pa.Commonwealth Ct. 609, 587 A.2d 48 (1991), this court recognized a prisoner's right to counsel. The majority assumes that Parolee here could have used that public defender as a mail carrier. However, I cannot agree that the mere fact that Parolee was entitled to representation by counsel means that a public defender is available for the ministerial purpose of delivering mail, and I cannot agree that by failing to designate the public defender as his personal postal service employee Parolee is deprived of an opportunity to be heard by this court. Public defenders are not postal workers, and to assign them such duties would overburden those already underfinanced and overworked attorneys.

Our Supreme Court has stated:

We do not condone untimeliness. In cases such as this, however, where the record shows clearly and without dispute that a petition for review was timely mailed prior to the 30–day jurisdictional deadline, where counsel for the appellant apprises the court of the record in that respect and timeliness can be determined from an examination of the records of the court, a fair and just interpretation of our rules makes a dismissal improper.

We need not have drafted our rules to equate the date of mailing with the date of filing. Nevertheless, our rules do allow filing by mail, and our courts cannot consistently judge a petition as timely by the date of its mailing and at the same time reject that petition when the record is sufficient to show a timely mailing.

*Miller,* 505 Pa. at 14–15, 476 A.2d at 367.

Here, a government document, i.e., Department of Corrections Form DC–138A "Cash Slip," signed by a Department of Corrections' official, clearly indicates that Parolee's account was charged for a mailing on April 14, 1994 within the thirty day period for appeal. Parolee contends that the document mailed was his petition for review, and there is no evidence to the contrary. In fact, because the Prothonotary of the Philadelphia County Court of Common Pleas apparently destroyed the envelope bearing the postmark, the only non-testimonial evidence which could have definitively supported or refuted Parolee's testimony was destroyed. Hence, there is no evidence, testimonial or documentary, to refute Parolee's own testimony that his petition for review is what he mailed on April 14, 1994. Moreover, the facts of this case are more compelling than those in *Miller* because Parolee here was incarcerated and, thus, limited in access to the required postal forms. Accordingly, I believe there is sufficient proof to indicate that Parolee filed his petition in accordance with Pa.R.A.P. 1514(a) and I would hold that his petition was timely filed. *See Miller.* In so holding, I would now overturn our previous ruling in *Turner.*

Because I would not quash this appeal, I would address the merits of this case. Here,

based on Parolee's admission of three technical parole violations, the Board found Parolee delinquent, recommitting him pursuant to Section 21.1(b) of the Parole Act.[1] According to Section 21.1(b) of the Parole Act, if a parolee is recommitted by the Board for a breach of the terms and conditions of parole other than the committing of a new crime, the parolee receives credit against the maximum sentence for the time spent on parole in good standing. However, an offender recommitted and found to be delinquent by the Board does not receive credit against the original maximum sentence. Thus, the parolee is penalized for his delinquency and suffers an extension of his maximum sentence. *Koresko v. Board of Probation and Parole*, 484 Pa. 136, 398 A.2d 981 (1979).

Parolee asks us to determine whether the Board violated his due process rights at the parole violation hearing because it provided Parolee with only a standard notice of charges and failed to notify him, in writing, that he was alleged to have been delinquent, that the Board was pursuing a delinquency finding and that a finding of delinquency would result in the loss of street time.[2] Parolee argues that he was never properly informed that the Board's charges included a penalty of loss of street time, thereby extending his maximum period of incarceration. Parolee believes that this extension of his maximum incarceration period, as a result of a finding by the Board that he is a technical parole violator in delinquent status, is a penalty just as serious as the recommitment time itself. Consequently, Parolee maintains that the Board should have provided him with written notice of its intention to treat

him as a delinquent. Had he known of such consequences of admitting to the parole violations, Parolee would not have pled as he did. He, thus, maintains that his admitting to the technical parole violations was made unknowingly and involuntarily based on the Board's failure to notify him of his delinquent status. I agree.

In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Court set forth the minimal due process requirements that a parole revocation hearing must meet to satisfy the Fourteenth Amendment of the U.S. Constitution. Those requirements include:

(1) written notice to the parolee of the alleged parole violations,

(2) disclosure to the parolee of evidence against him,

(3) opportunity to be heard in person and to present witnesses and documentary evidence,

(4) right to confront and cross-examine adverse witnesses,

(5) neutral and detached hearing body, and

(6) written statement by the fact-finder as to the evidence relied on and reasons for revoking parole.

Moreover, the Pennsylvania Supreme Court has held that the requirements of due process include informing a defendant of the range of penalties involved in the crime with which he is being charged. *Commonwealth v. Zanine*, 444 Pa. 361, 282 A.2d 367 (1971); see, e.g., *United States v. Wadsworth*, 830 F.2d 1500, 1504 (9th Cir.1987) (emphasis added) (holding that "a defendant can knowingly

---

1. Act of August 6, 1941, P.L. 861, *as amended*, 61 P.S. § 331.21a.

Section 21.1(b) of the Parole Act (emphasis added) states, in pertinent part:

(b) Technical Violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution in the Commonwealth who, during the period of parole, violates the terms and conditions of his parole, other than by the commission of a new crime of which he is convicted or found guilty ... may be recommitted after hearing before the board. If he is so recommitted, *he shall be given credit for the time served on parole in good standing but with no credit for delinquent time....*

2. The Board argues that Parolee did not raise this due process issue in his administrative petition for review, thereby waiving the issue on appeal to this court. However, my review of the applicable documents indicates that Parolee did in fact raise a due process argument at the relevant stages of this proceeding. Therefore, I believe that he has not waived the issue for purposes of appellate review. *See McCaskill v. Pennsylvania Board of Probation and Parole*, 158 Pa.Commonwealth Ct. 450, 631 A.2d 1092 (1993), *appeal denied*, 537 Pa. 655, 644 A.2d 739 (1994).

and intelligently waive his right to counsel only after his [sic] is aware of the nature of the charges against him, *the possible penalties,* and the dangers and disadvantages of self-representation"); *see also Lanzetta v. Board of Probation and Parole,* 130 Pa.Commonwealth Ct. 312, 568 A.2d 283 (1989).

Here, the Board did not inform Parolee that he was alleged to have been delinquent, that the Board was pursuing a delinquency finding, and that such a finding would result in loss of street time and an extension of his maximum sentence. Moreover, my review of the violation hearing transcript reveals no reference to delinquency. As such, I believe that Parolee was never informed, either in writing or during the hearing itself, that he was being charged with delinquency, nor was he informed of the penalties associated with being adjudicated delinquent.[3] Therefore, Parolee's admission to the technical violations was rendered without necessary information, and the Board's failure to inform Parolee of the consequences of his plea violates his due process rights.

Accordingly, I would reverse the Board's order.

---

**3.** I note that the Board's action originally declaring Parolee delinquent was not introduced at the hearing.