NO. 95-358

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

TRAVIS TADEWALDT,

      Defendant and Appellant.

FILED

JUL 22 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

        Steve Fletcher; Bulman Law Associates,
        Missoula, Montana

     For Respondent:

        Hon. Joseph P. Mazurek, Attorney General,
        Kathy Seeley, Ass't Attorney General,
        Helena, Montana

        Robert L. Deschamps, III, Missoula County Attorney,
        Missoula, Montana

Submitted on Briefs:  April 11, 1996

Decided: July 22, 1996

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court

Travis Tadewaldt (Tadewaldt) appeals from the judgment of the Fourth Judicial District Court, Missoula County, entered on his plea of guilty to the felony charge of criminal possession of dangerous drugs and from its underlying orders denying his motions to dismiss. We affirm.

We restate the issues on appeal as follows:

1. Did the District Court err in concluding that § 46-11-504(1), MCA, does not bar prosecution of the drug charge?

2. Did the District Court err in concluding that § 45-g-102, MCA, does not deny Tadewaldt equal protection of the laws or constitute cruel and unusual punishment?

Tadewaldt was arrested for driving under the influence of alcohol and/or drugs (DUI) on August 10, 1994. Several months later, he pled guilty to that misdemeanor charge in Missoula Municipal Court. The Municipal Court fined Tadewaldt $350, required him to complete the Montana ACT program and suspended the entirety of a ten-day jail sentence.

Immediately following Tadewaldt's arrest for the DUI offense, several pills were found in his possession which later were identified as Schedule III and IV drugs under § 50-32-101, MCA. On August 22, 1994, the State of Montana (State) charged Tadewaldt in the District Court with criminal possession of dangerous drugs, a felony offense, in violation of § 45-g-102, MCA. Tadewaldt pled not guilty to the criminal possession charge.

After judgment was entered on the DUI charge in Municipal

Court, Tadewaldt moved the District Court to dismiss the **criminal** possession of dangerous drugs charge.  He contended that that offense arose out of the same transaction as the DUI and, as a result, § 40-11-504, MCA, barred the subsequent prosecution. The court denied Tadewaldt's motion to dismiss.

Tadewaldt later filed a second motion to dismiss the criminal possession of dangerous drugs charge.  He argued that § 45-g-102, MCA, denies him equal protection of the laws and constitutes cruel and unusual punishment because it does not provide for a lesser included or misdemeanor offense for possession of a **small** amount of drugs.  The District Court denied Tadewaldt's motion.

Tadewaldt subsequently withdrew his not guilty plea and pled guilty to the charge of criminal possession of dangerous drugs, reserving his right to appeal the denial of his motions to dismiss. Thereafter, the District Court entered judgment and deferred imposition of sentence for two years subject to specified terms and conditions.  Tadewaldt appeals.

1.  Did the District Court err in concluding that § 46-**11-504(1),** MCA, does not bar prosecution of the drug charge?

In his first motion to dismiss the criminal possession of dangerous drugs charge, Tadewaldt argued that § 46-11-504(1), MCA, bars prosecution for that offense.  Section 46-11-504, MCA, provides in relevant part:

> When conduct constitutes an offense within the concurrent jurisdiction . . of two courts of separate, overlapping, or concurrent jurisdiction in this state, a prosecution in any other jurisdiction is a bar to a subsequent prosecution in this state under the same circumstances barring further prosecution in this state

**3**

        if:
                (1) the first prosecution resulted in an acquittal
        or in a conviction and the subsequent prosecution is
        based on an offense arising out of the same transaction
        . . . .

Thus, a subsequent prosecution is barred under this statute, by its terms, if the following three factors are met: (1) a defendant's conduct constitutes an offense within the jurisdiction of the court where the first prosecution occurred and within the jurisdiction of the court where the subsequent prosecution is pursued; (2) the first prosecution results in an acquittal or a conviction; and (3) the subsequent prosecution is based on an offense arising out of the same transaction.

        Neither Tadewaldt nor the State disputes that the second § 46-11-504(1), MCA, factor is met here. The first prosecution resulted in Tadewaldt's guilty plea in the Municipal Court on the DUI charge and imposition of sentence thereon and, under § 46-1-202(6), MCA, a judgment or sentence entered on a guilty plea constitutes a conviction.

        The District Court concluded that neither of the two remaining § 46-11-504(1), MCA, factors is met in this case. On that basis, the court concluded that § 46-11-504(1), MCA, does not bar the subsequent prosecution for criminal possession of dangerous drugs. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. State v. Gould (1995), 273 Mont. 207, 219, 902 P.2d 532, 540.

        We begin by considering whether, under the language contained in § 46-11-504(1), MCA, the subsequent prosecution of Tadewaldt on

4

the drug charge "is based on an offense arising out of the same transaction" as the DUI prosecution. Insofar as it is relevant here, "same transaction" is statutorily defined as

> conduct consisting of a series of acts or omissions that are motivated by:
> (a) a purpose to accomplish a criminal objective and that are necessary or incidental to the accomplishment of that objective . . .

Section 46-1-202(22), MCA.

We have interpreted the "same transaction" factor contained in § 46-11-504, MCA, and its predecessor, § 95-1711(4), R.C.M. (1947), on numerous occasions. See, e.g., State v. Sword (1987), 229 Mont. 370, 747 P.2d 206; State v. Houser (1981), 192 Mont. 164, 626 P.2d 256; State v. Zimmerman (1977), 175 Mont. 179, 573 P.2d 174. In all three of the foregoing cases, we interpreted that factor according to the statutory definition of "same transaction." See Sword, 747 P.2d at 208; Houser, 626 P.2d at 258; Zimmerman, 573 P.2d at 179. The statutory definition of "same transaction" applied in those cases has remained constant and, indeed, was identical to the current definition contained in § 46-1-202(22), MCA. *Compare* § 46-1-202(22), MCA, *with* §§ 46-11-501(1)(a), MCA (1987) (applied in Sword, 747 P.2d at 208); 46-11-501(1)(a), MCA (1979) (applied in Houser, 626 P.2d at 258); and 95-1711(1)(a), R.C.M. (1947) (applied in Zimmerman, 573 P.2d at 179).

In Sword, the most recent of our cases interpreting the § 46-11-504, MCA, "same transaction" factor, the defendant was charged in the United States District Court for the District of Montana with violating the Endangered Species Act of 1973, pled guilty to

5

the offense and was sentenced. _Sword,_ 747 P.2d at 207.
Thereafter, the defendant was charged in Montana justice court with
violating § 87-2-106(5), MCA (1985), for making false statements on
his application for a grizzly bear trophy license and was
convicted. _Sword,_ 747 P.2d at 207. On appeal by the defendant to
the Montana district court, the court concluded that the second
prosecution was barred and granted the defendant's motion to
dismiss. _Sword,_ 747 P.2d at 207.

On appeal to this Court, we observed that the defendant's
conduct consisted of "possessing, carrying, and transporting of a
bear taken unlawfully," and noted his guilty plea based on that
conduct to the Endangered Species Act charge in federal court. The
trophy license--which the defendant obtained by making false
statements on his application--authorized him to possess and
transport the bear. _Sword,_ 747 P.2d at 208-209. Applying the
"same transaction" definition contained in § 46-11-501(1)(a), MCA
(1987), to the defendant's conduct, we concluded that the false
statements which formed the basis for the state charge were
"motivated and necessary or at least incidental to the
accomplishment of the criminal objective of possessing, carrying,
and transporting of a grizzly bear taken unlawfully" for which he
was convicted in the federal court. _Sword,_ 747 P.2d at 209. Thus,
because the defendant's conduct fell within the purview of the
statutory definition of "same transaction," we held that the
subsequent prosecution in state court was based on an offense
arising out of the same transaction as the federal prosecution

6

within the meaning of § 46-11-504, MCA.  <u>Sword,</u>  747 P.2d at 209.

Applying <u>Sword</u> to Tadewaldt's conduct mandates a result opposite from that reached in <u>Sword</u>.  Here, Tadewaldt ingested an unidentified substance and drove a vehicle while under the influence of that substance; he also possessed Schedule III and IV drugs.  Tadewaldt was not charged in the District Court with criminal possession of the unidentified substance he had already ingested and which resulted in the DUI charge and conviction in the Municipal Court. The criminal possession of dangerous drugs charge was based on Schedule III and IV drugs in his possession subsequent to his arrest for DUI.

In <u>Sword,</u> the defendant's conduct underlying the subsequent prosecution in state court, namely, making false statements on a grizzly bear trophy license application, enabled him to possess and transport a grizzly bear, for which he was convicted in federal court; thus, the defendant's conduct in procuring the license through false statements clearly was motivated by a purpose to accomplish the criminal objective of possessing and transporting a grizzly bear and was necessary or incidental to that objective.  In the present case, however, the opposite is true.  The conduct underlying Tadewaldt's "criminal objective" of DUI--ingesting an unidentified substance and driving a vehicle while under the influence of that substance--is unrelated to his possession of dangerous drugs.  Tadewaldt had completed his "criminal objective" of DUI and, later, Schedule III and IV drugs were found in his possession.  The drugs forming the basis of the criminal possession

7

charge had not been ingested and did not contribute to Tadewaldt's impairment. Thus, in statutory terms, Tadewaldt's conduct in possessing the dangerous drugs was not motivated by a purpose to accomplish the "criminal objective" of DUI, nor was it necessary or incidental to that "objective." We conclude that Tadewaldt's conduct does not meet the definition of "same transaction" contained in § 46-1-202(22), MCA, and, therefore, the criminal possession of dangerous drugs charge does not arise out of the same transaction as the DUI charge within the meaning of § 46-11-504(1), MCA.

As set forth above, § 46-11-504(1), MCA, is written in the conjunctive; as a result, all three factors must be met before a subsequent prosecution is barred. See § 46-11-504(1), MCA; State v. Miller (1988), 231 Mont. 497, 517, 757 P.2d 1275, 1288. Based on our conclusion that the "same transaction" factor is not met here, we need not address the "jurisdiction" factor contained in § 46-11-504, MCA. Nevertheless, we reiterate here the concern we expressed in Sword over the somewhat unclear "concurrent jurisdiction" portion of § 46-11-504, MCA, and, again, invite the legislature to more clearly evidence its intent with regard to this part of the statute. See Sword, 747 P.2d at 210.

As a final matter in this regard, we observe that our cases interpreting the "same transaction" factor in § 46-11-504(1), MCA, are not entirely consistent. We cited above to Sword, Houser, and Zimmerman, wherein we interpreted the "same transaction" factor in § 46-11-504(1), MCA, by applying the statutory definition of "same

8

transaction;" those cases were decided in 1987, 1981, and 1977, respectively. After deciding _Zimmerman_ and _Houser_, but before _Sword_, we decided State v. Pierce (1982), 199 Mont. 57, 647 P.2d 847, and departed from that approach. In order to avoid confusion in future cases, we take this opportunity to revisit _Pierce._

In _Pierce,_ the defendant was charged with DUI in justice court and pled guilty. Several days later, the defendant was charged in district court with two counts of aggravated assault and one count of failure to stop at the scene of an accident. He pled guilty to the failure to stop charge, went to trial on the aggravated assault charges and was convicted. _Pierce,_ 647 P.2d at 848-49. The defendant argued on appeal that "a charge of aggravated assault would violate his constitutional right against being placed in double jeopardy as he had already pled guilty to another charge arising from the same accident, driving under the influence of alcohol." _Pierce,_ 647 P.2d at 850. He apparently did not raise the issue in terms of the statutory bar contained in § 46-11-504, MCA. _See_ _Pierce,_ 647 P.2d at 849-50.

We set forth § 46-11-504(1), MCA, as the "applicable codification of defendant's constitutional right against being placed in double jeopardy" and interpreted the "same transaction" language of the statute under Blockburger v. United States (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, the traditional double jeopardy test. _See_ _Pierce,_ 647 P.2d at 850. Applying _Blockburger_, we evaluated the elements of the offenses with which the defendant was charged and concluded that assault and DUI each require proof

of an element the other does not.  *Pierce,* 647 P.2d at 850. On that basis, we held that the defendant's constitutional right against being placed in double jeopardy was not violated.  *Pierce,* 647 P.2d at 850. While it is not altogether clear why we failed to interpret the "same transaction" factor in § 46-11-504, MCA, by applying the statutory definition of that term, as we previously had done in *Houser* and *Zimmerman,* it appears that the defendant's framing of the issue in double jeopardy terms pointed us to the traditional *Blockburser* analysis.

We stated in *Sword,* and reaffirm here, that § 46-11-504(1), MCA, affords criminal defendants greater protection from double jeopardy than is provided under *Blockburser;* indeed, we aptly noted in *Sword* that application of *Blockburser* in § 46-11-504(1), MCA, cases would strip the defendant of the protection granted under that statute.  *Sword,* 747 P.2d at 209.  While the *Blockburser* "elements" test generally is appropriate in analyzing double jeopardy arguments relating to whether there are two offenses or only one (*see* *Sword,* 747 P.2d at 209), the plain language of § 46-11-504(1), MCA, mandates a broader conduct- and transaction-based analysis than *Blockburser* provides.

As discussed above, we properly interpreted § 46-11-504(1), MCA, in *Sword*--consistent with our pre-*Pierce* cases and the statute--by applying the statutory definition of "same transaction."  Unfortunately, we distinguished *Pierce* in *Sword* based only on the "concurrent jurisdiction" portion of § 46-11-504, MCA, without noting the inconsistency between *Pierce,* on the one

10

hand, and <u>Houser</u> and <u>Zimmerman</u>, on the other, with regard to the "same transaction" factor. See <u>Sword,</u> 747 P.2d at 209.

To resolve any confusion, we state clearly here that the <u>Blockburger</u> test is inapplicable in analyzing the " same transaction" factor contained in § 46-11-504(1), MCA. See <u>Sword,</u> 747 P.2d at 209. In interpreting that factor, courts must apply the statutory definition of "same transaction." Accordingly, we overrule <u>Pierce</u> to the extent it indicates that § 46-11-504(1), MCA, is properly analyzed under Blockburger.

We concluded above that Tadewaldt's conduct underlying the DUI and drug charges did not arise from the same transaction and, therefore, that the "same transaction" factor contained in § 46-11-504(1), MCA, is not met here. We hold, therefore, that the District Court correctly concluded that § 46-11-504(1), MCA, does not bar the prosecution for criminal possession of dangerous drugs in this case.

> 2. Did the District Court err in concluding that § 45-9-102, MCA, does not deny Tadewaldt equal protection of the laws or constitute cruel and unusual punishment?

Tadewaldt's second motion to dismiss challenged the constitutionality of § 45-9-102(5), MCA, based on equal protection and cruel and unusual punishment grounds. Both constitutional challenges were premised on the absence in § 45-9-102(5), MCA, of a "distinction in punishment [for] varying quantities of the same drug . . ." The District Court concluded that § 45-g-102, MCA, did not deny Tadewaldt equal protection of the laws or constitute cruel and unusual punishment and, on that basis, denied Tadewaldt's

11

motion to dismiss.

At the outset, we restate the well-established principle that "[a] legislative enactment is presumed to be constitutional and will be upheld on review except when proven to be unconstitutional beyond a reasonable doubt." State v. Lilburn (1994), 265 Mont. 258, 262, 875 P.2d 1036, 1039 (citing City of Billings v. Laedeke (1991), 247 Mont. 151, 154, 805 P.2d 1348, 1349). The party attacking a statute as unconstitutional bears a significant burden in proving its invalidity. In re Matter of Wood (1989), 236 Mont. 118, 122, 768 P.2d 1370, 1373 (citing T & W Chevrolet v. Darvial (1982), 196 Mont. 287, 292, 641 P.2d 1368, 1370).

*Equal Protection*

Tadewaldt's equal protection argument is premised on the failure of § 45-9-102, MCA, to provide for different degrees of culpability and sentencing based on the quantity of Schedule III and IV drugs in a defendant's possession. He states that "the bulk of criminal offenses in Montana recognize differing degrees of culpability in their application and appropriately provide for varying levels of punishment."

Tadewaldt's somewhat murky equal protection argument notwithstanding, it is clear that it is within the province of the legislature to distinguish between criminal offenses and to set punishments. State v. Bruns (1984), 213 Mont. 372, 378, 691 P.2d 817, 821 (citing Gore v. United States (1958), 357 U.S. 386, 393, 78 S.Ct. 1280, 1285, 2 L.Ed.2d 1405, 1410-11). A defendant's constitutional right to equal protection of the laws is not

12

violated unless the defendant is treated differently based on an impermissible classification. See Bruns, 691 P.2d at 821. If everyone in the same class is treated equally, there is no violation of equal protection. State ex rel. Zander v. District Court (1979), 180 Mont. 548, 556-57, 591 P.2d 656, 661 (citation omitted).

With exceptions not at issue here, all persons in possession of statutorily-defined dangerous drugs commit the offense of criminal possession of dangerous drugs defined in § 45-g-102, MCA, and are subject to the sentences set forth therein. Thus, as was the case in State ex rel. Zander, "[h]ere there is but one class and all persons within that class are treated equally satisfying constitutional equal protection requirements." See State ex rel. Zander, 591 P.2d at 661. Absent any classification in § 45-9-102(5), MCA, no impermissible classification exists as a matter of law. Accordingly, we hold that the District Court did not err in concluding that § 45-9-102(5), MCA, does not deny Tadewaldt equal protection of the laws.

*Cruel and Unusual Punishment*

Section 45-9-102(5), MCA, provides that "[a] person convicted of criminal possession of dangerous drugs . . . shall be imprisoned in the state prison for a term not to exceed 5 years or be fined an amount not to exceed $50,000, or both." Pursuant to § 45-9-102(6), MCA, "[a] person of the age of 21 years or under convicted of a first violation under this section is presumed to be entitled to a deferred imposition of sentence of imprisonment." The District

13

Court deferred imposition of Tadewaldt's sentence for two years, subject to stated terms and conditions.

Both the Eighth Amendment to the United States Constitution and Article II, Section 22 of the Montana Constitution prohibit cruel and unusual punishment. We consistently have held, however, that a sentence which falls within the statutory maximum is not cruel and unusual punishment. See, e.g., State v. DeSalvo (1995), 273 Mont. 343, 350, 903 P.2d 202, 206-207; Bruns, 691 P.2d at 820. Tadewaldt's sentence was substantially less severe than the statutory maximum and, under the general rule referenced above, it does not constitute cruel and unusual punishment. See Bruns, 691 P.2d at 820.

An exception to this general rule exists, however. When a sentence is so disproportionate to the crime that it shocks the conscience and outrages the moral sense of the community or of justice, it constitutes cruel and unusual punishment. Bruns, 691 P.2d at 820 (citation omitted). A defendant has the burden of proving that the sentence he received falls within this exception. Bruns, 691 P.2d at 820.

Tadewaldt argues that "[a] mandatory felony for a college kid in possession of such a small quantity of a Schedule IV drug is cruel and unusual punishment . . . " but concedes on appeal that he received the most lenient sentence possible under the statute. Furthermore, if Tadewaldt adheres to the terms and conditions of his deferred sentence, he can avoid having a permanent felony record. See § 46-18-204, MCA.

14

On this record, Tadewaldt's bare assertion of cruel and unusual punishment falls far short of meeting his burden of proving that his sentence is so disproportionate to the crime that it outrages the moral sense of the community or of justice. Accordingly, we hold that the District Court did not err in concluding that Tadewaldt's sentence does not constitute cruel and unusual punishment.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

15