JUSTICE REGNIER
concurring in part and dissenting in part.
¶137 I concur with the opinion of Justice Leaphart (hereinafter referred to as the “Court’s opinion”)[1] with the exception of its analysis of the former conviction statute, § 46-11-503, MCA, contained in subpart (c) to Issue 11. The issue in subpart (c) concerns whether the District Court erred in concluding that Hocevar’s conviction for Criminal Endangerment in regard to Wesley’s Benadryl overdose did not bar a subsequent prosecution on the charges arising out of Mathew’s death. Because I believe that Wesley’s Benadryl overdose and Mathew’s death did not arise out of the same transaction, I would vote to affirm the District Court. I take this opportunity to restate some of the relevant facts.
¶138 On February 16, 1994, the State filed an Information charging Hocevar with two offenses, stated in the alternative, stemming from her son Wesley’s Benadryl overdose. The State alleged that Hocevar had provided Wesley with Benadryl on May 21, 1992. The State also charged Hocevar with three offenses stemming from the death of her son Mathew from aspiration of vomitus. In regard to these charges, the State alleged that Hocevar had smothered Mathew in December 1991.
¶139 On June 29, 1994, Hocevar filed a motion to sever Counts I and II, the charges stemming from Wesley’s Benadryl overdose, from trial on Counts III, IV, and V, the charges stemming from Mathew’s death, contending that joinder of these charges violated § 46-11-404, MCA. The District Court denied Hocevar’s motion to sever. On May 12, 1995, the jury returned a verdict of guilty as to Count II, Criminal Endangerment, with respect to Hocevar’s conduct toward Wesley, but was unable to reach a verdict on Counts III, TV, and V pertaining to Mathew’s death.
*205 ¶140 On May 22, 1995, the State filed a motion requesting the District Court to schedule a trial date for Counts III, IV, and V of the Information. Hocevar filed a Renewed Motion to Dismiss requesting that the District Court dismiss Counts III, IV, and V of the Information. Hocevar contended that a second trial for Counts III, IV, and V was prohibited by the plain language of § 46-11-503(1)(b), MCA (hereinafter also referred to as the “former conviction statute”). On December 18, 1996, the District Court denied Hocevar’s motion to dismiss. The District Court concluded that pursuant to State v. Berger (1993), 259 Mont. 364, 856 P.2d 552, a second prosecution on Counts III, IV, and V was not barred because these charges did not arise out of the same transaction as Hocevar’s Criminal Endangerment conviction.
¶ 141 On appeal, Hocevar asserts that we should overrule Berger because in deciding Berger we violated a principle of statutory construction by adding the requirement of “same transaction” to our interpretation of § 46-11-503(1)(b), MCA. In the alternative, Hocevar claims that Counts III, IV, and V relate to the same transaction as Count II and, therefore, a subsequent prosecution on the charges relating to her conduct with respect to Mathew’s death is still barred under Berger. In this regard, Hocevar maintains that the counts arising from Wesley’s hospitalization and the counts arising from Mathew’s death are part of the same transaction for purposes of the former conviction statute because the State contended, and the District Court agreed, that the counts could be joined for trial under § 46-11-404, MCA.
¶142 The statute which Hocevar contends bars a retrial on the charges arising out of Mathew’s death is § 46-11-503(1)(b), MCA, which provides, in relevant part:
Prosecution based on same transaction barred by former prosecution.
(1) When two or more offenses are known to the prosecutor, are supported by probable cause, and are consummated prior to the original charge and jurisdiction and venue of the offenses lie in a single court, a prosecution is barred if:
(b) the former prosecution resulted in a conviction that has not been set aside, reversed, or vacated.
¶143 I agree with the Court’s conclusion that this provision only bars subsequent prosecutions of offenses arising out of the “same transaction.” See Berger, 259 Mont. at 368, 856 P.2d at 554. Accord *206 ingly, the remaining question is whether the charges stemming from Mathew’s death in December 1991 arose out of the same transaction as Hocevar’s Criminal Endangerment conviction which derived from Wesley’s Benadryl overdose in May 1992.
¶144 When determining whether charges arose out of the same transaction for purposes of the former conviction statute we have referred to the definition of same transaction contained in § 46-1-202(22), MCA. See State v. Waldrup (1994), 264 Mont. 456, 459, 872 P.2d 772, 774. Section 46-1-202(22)(a), MCA, provides:
“Same transaction” means conduct consisting of a series of acts or omissions that are motivated by:
(a) a purpose to accomplish a criminal objective and that are necessary or incidental to the accomplishment of that objective....
¶145 The charges related to Mathew’s death and the charges related to Wesley’s hospitalization do not fit under the statutory definition of “same transaction” because Hocevar did not engage in conduct consisting of a series of acts motivated by a purpose to accomplish a single criminal objective. Rather, these events are the product of two separate criminal objectives which happen to share a noncriminal motivation. In one instance, Hocevar’s alleged criminal objective was to smother Mathew. In the other, Hocevar’s criminal objective was to endanger Wesley by providing him with Benadryl. These events are allegedly linked by Hocevar’s noncriminal objective of seeking attention (the MSBP evidence). However, the sole fact that in both instances Hocevar was seeking attention does not bring these separate events within the definition of “same transaction.” Seeking attention is not a criminal objective under the same transaction provision.
¶146 In my view, the court erred by confusing Hocevar’s criminal and noncriminal objectives, thereby concluding that these separate events, Mathew’s death and Wesley’s overdose, are part of the same transaction. This error is manifested by the Court’s conclusion that “the seeking of attention through the harming of one’s children is a criminal objective.” Court’s opinion at ¶ 131. The objective of harming a specific person (e.g., Hocevar’s son Mathew) has been criminalized, however, seeking attention has not. What the Court misconstrues is the fact that while Hocevar’s conduct with regard to Mathew is of a similar character as her conduct toward Wesley in that in both instances Hocevar committed criminal acts in order to receive attention, these events did not arise out of the same transaction because they did not share the same criminal objective. As delineated above, *207 these counts arise out of two separate and distinct transactions because they have separate and distinct criminal objectives. One set of charges arose out of the acts Hocevar committed in order to further the criminal objective of smothering Mathew. The other set of charges arose out of the acts Hocevar committed in order to further the criminal objective of harming Wesley. These crimes are of a similar nature in that they both shared a noncriminal motivation, the seeking of attention.
¶147 Seeking attention is not a “criminal objective” in any sense under which we have previously analyzed the former conviction statute. In my view the meaning of “criminal objective” is fairly clear: a goal which has been criminalized. This is precisely how we have previously analyzed it. For instance, had the State alleged that Hocevar poisoned Wesley with a substance which was illegal to possess, a conviction for criminally endangering Wesley would have prevented a subsequent prosecution for the illegal possession of the poisonous substance. The unlawful possession of the poisonous substance was necessary in order to accomplish the criminal goal of poisoning Wesley. The two crimes would be united by a common criminal objective and thus be part of the “same transaction.”
¶148 I note that the facts of this case are remarkably similar to the facts of Waldrup in which we held that multiple counts of indecent exposure filed against the defendant hád not arisen out of the same transaction as previous charges for which the defendant had already been convicted. 264 Mont. at 459, 872 P.2d at 774. Like Hocevar, presumably Waldrup repeatedly exposed himself in order to garner attention. However, we did not conclude that the similarity in motive meant that the separate incidents were part of the “same transaction” for purposes of the former conviction statute. This is because this provision does not prohibit the subsequent prosecution of a defendant for other similar offenses which share a similar noncriminal motivation.
¶149 A comparison of two decisions interpreting § 46-1-202(22)(a), MCA, clearly supports the conclusion that smothering Mathew and providing Wesley with Benadryl are not part of the same transaction. In State v. Sword (1987), 229 Mont. 370, 747 P.2d 206, we concluded that the defendant had engaged in a series of acts for the purpose of accomplishing the criminal objective of unlawfully taking a grizzly bear. The defendant had pled guilty to violating the Endangered Species Act by knowingly possessing, carrying, and transporting a grizzly *208 bear taken unlawfully. The State subsequently filed an Information charging Sword with making false statements on a trophy license. The trophy license authorized Sword to possess and transport the grizzly bear. We concluded that the two charges arose from the same transaction because the false statements on the trophy license were necessary to the accomplishment of the criminal objective of possessing, carrying, and transporting a grizzly bear taken unlawfully. Sword, 229 Mont. at 374, 747 P.2d at 209.
¶150 In State v. Tadewaldt (1996), 277 Mont. 261, 922 P.2d 463, we concluded that a former conviction for DUI did not bar a subsequent prosecution for criminal possession of dangerous drugs because the acts were not motivated by the purpose to accomplish a common criminal objective. The defendant in this case, Tadewaldt, was arrested for driving under the influence. Immediately following his arrest, several pills were found in his possession which were later identified as dangerous drugs. Tadewaldt pled guilty to a DUI charge and moved to dismiss a separate prosecution for criminal possession of dangerous drugs, asserting that it arose out of the same transaction. We stated:
The drugs forming part of the criminal possession charge had not been ingested and did not contribute to Tadewaldt’s impairment. Thus, in statutory terms, Tadewaldt’s conduct in possessing the dangerous drugs was not motivated by a purpose to accomplish the “criminal objective” of DUI, nor was it necessary or incidental to that “objective.”
Tadewaldt, 277 Mont. at 267, 922 P.2d at 466.
¶ 151 The paradigmatic example of charges arising out of the “same transaction” is Sword. Sword engaged in a series of acts motivated by the purpose of furthering his single criminal objective of taking a grizzly bear unlawfully. On the other hand, Tadewaldt did not involve charges arising out of the same transaction, even though they arose out of the same arrest, because the acts were not motivated by a single criminal objective. The facts of the instant case are unlike the conduct at issue in Sword. Allegedly smothering Mathew was not necessary or incidental to the accomplishment of harming Wesley by providing him with an overdose of Benadryl. Rather, these incidents involved two separate criminal objectives, smothering Mathew on the one hand and providing Benadryl to Wesley on the other, which were similar in that they shared a noncriminal objective, gaining attention. Undeniably, the Court’s “same transaction” analysis is muddled by the combination of criminal and noncriminal objectives con *209 tained in its conclusion that “the seeking of attention through harming one’s children is a criminal objective.”
¶152 It is clear that the actual reason for the Court’s conclusion that the charges arose from the same transaction for purposes of the former conviction statute is its belief that the State adopted “contrary” positions on joinder and on the former conviction statute. The Court’s opinion states:
Having successfully argued to the District Court that the Wesley counts and the Mathew counts are part of the “same transaction” for purposes of joinder, the State is then estopped from conveniently adopting a contrary position and arguing that the counts are not part of the “same transaction” for purposes of further prosecution under § 46-11-503, MCA.
Court’s Op. at ¶ 127.
¶153 The Court’s conclusion that the State has adopted contrary positions is based on a misunderstanding of the State’s positions on joinder and on the former conviction statutue. The Court’s opinion states:
The State’s theory, which was supported by expert testimony, was that Susan engaged in a series of acts towards Wesley and Mathew that were motivated by a desire to accomplish a criminal objective (drawing attention to herself through harming her children) and that the overdosing of Wesley and the smothering of Mathew were necessary to the accomplishment of that objective. The Mathew counts and the Wesley count thus come within the “same transaction” element of § 46-11-503, MCA.
Court’s Op. at ¶ 131.
¶154 Actually, the Court’s representation of the State’s positions as inconsistent is not accurate. As the Court acknowledges, joinder and the applicability of the former conviction statute are separate issues. The language of these provisions, the decisions interpreting them, and the purposes which they further are distinct. The State’s position on joinder has nothing to do with its position on the former conviction statute. The plain language of the joinder provision, § 46-11-404, MCA, does not limit joinder to charges arising out of the “same transaction,” but rather includes charges which are of a “similar character” or charges which are part of a “common scheme or plan.”
¶155 The Court states that the State’s entire prosecutorial theme was that all of the counts arose out of the same transaction, referring *210 to the State’s brief supporting joinder. See Court’s Op. at ¶ 129. In fact, the State posed alternative arguments in its brief supporting joinder. The State did assert that the counts arose out of “a common plan” in that they were the product of Hocevar’s MSBP pathology. However, the State also claimed that “[t]he charges in Counts I and II are of the same or similar nature to those in Counts III, IV and V” and should be joined because of their “striking similarity.” (Emphasis added.) From these assertions, the Court draws the conclusion that the State is “estopped from conveniently adopting” a subsequent position on the former conviction statute which is inconsistent with one of its alternative arguments in its brief in support of joinder.[2]
¶156 As the Court observes throughout its opinion, the essence of the State’s position on joinder was that joinder of the charges was proper because “in both instances Susan injured or killed her children in an attempt to draw attention to herself” and the State intended to call expert witnesses on MSBP which would be relevant to all the charges. Court’s Op. at ¶¶ 66, 67, and 130. Significantly, the Court acknowledges that the District Court joined the charges for trial, not because they arose from the same transaction, but because the counts were “similar in nature and much of the proof... would apply to all counts.” Court’s Op. at ¶ 64 (emphasis added). We correctly affirmed the District Court’s joinder of the charges not because they arose from the same transaction, but rather because the counts were “logically linked by the MSBP motive and proof regarding all the charges overlapped.” Court’s Op. at ¶ 67. Had the State argued that the charges could be joined for the sole reason that they were a series of acts motivated by the purpose to commit a single criminal objective, and more importantly, had the District Court agreed, it would have been error to have affirmed on that basis because, as noted above, the charges could not have been part of the “same transaction” for purposes of joinder-they did not share a “single criminal objective.” Section 45-2-101(7), MCA (emphasis added).
¶157 The State’s actual position with regard to the former prosecution statute was that Hocevar’s conduct in relation to Wesley’s overdose was “not necessary or incidental to the accomplishment of any *211 criminal objective related to the conduct alleged [with respect to Mathew’s death].” (Emphasis added.) It is clear to me that the State correctly maintained that the charges could be joined because they were of a similar nature and logically linked by evidence of motivation while at the same time maintaining that Hocevar’s conviction did not bar a subsequent prosecution because Mathew’s death was not incidental or necessary to the accomplishment of Wesley’s overdose. In no way are these positions inconsistent.
¶158 The resolution of this issue does not depend on one of the State’s alternative arguments in its brief supporting joinder below, that is simply a red herring. The precise issue, as correctly framed by the Court, is “[w]hether further prosecution on counts III, IV, and V is barred by § 46-11-503, MCA.” Court’s Op. at ¶ 123. I would conclude that a conviction on one of the charges relating to Wesley’s overdose does not preclude a subsequent prosecution on the charges relating to Mathew’s suffocation because they do not arise out of the “same transaction.” The conduct underlying the charges occurred on different dates, involved different victims, and, while they shared a common explanation of motive, the MSBP evidence, the acts were not in furtherance of a common criminal objective. Hocevar did not smother Mathew in order to further the criminal objective of endangering Wesley, nor was the smothering of Mathew necessary or incidental to Wesley’s overdose.
¶159 Accordingly, I would affirm the District Court conclusion that a subsequent prosecution on charges arising from Mathew’s death was not precluded on account of a previous conviction arising from Wesley’s overdose.
CHIEF JUSTICE TURNAGE and JUSTICE GRAY, join in the foregoing dissenting opinion.

. I refer to the “Court’s opinion” rather than the “Majority opinion” for the following reason: the “same transaction” analysis contained in subpart (c) to Issue 11 of Justice Leaphart’s opinion has been joined by only one other member of the Court, Justice Nelson. Justices Trieweiler and Hunt concur in the Court’s result, barring a retrial of the charges arising from Mathew’s death, but on different grounds. They contend that the former conviction statute bars subsequent prosecutions regardless of whether the charge which forms the basis of the subsequent prosecution arose out of the “same transaction.” Therefore, although a majority of the Court would reverse the District Court and bar a retrial on Counts III, IV, and V of the Information, there is no majority opinion on that issue.

. I am not aware of any previous casein which we concluded that a party could be held to one of its alternative arguments for purposes of all subsequent legal issues which arise during litigation; nor, apparently, is the Court, thus the lack of citation to any authority. See Court’s Op. at ¶ 127.