DA 10-0311

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 125

STATE OF MONTANA,

  Plaintiff and Appellee,

v.

CARISSA KOPP,

  Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fifth Judicial District, In and For the County of Jefferson, Cause No. DC 09-08 Honorable Loren Tucker, Presiding Judge |

COUNSEL OF RECORD:

  For Appellant:

  Robin A. Meguire, Attorney at Law; Great Falls, Montana

  For Appellee:

  Steve Bullock, Montana Attorney General; Mardell Ployhar, Assistant Attorney General; Helena, Montana

Submitted on Briefs: January 5, 2011

Decided: June 7, 2011

Filed:

_____
                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Defendant Carissa Kopp appeals from the denial of her motion to dismiss the charge of criminal possession of dangerous drugs, a felony, by the Fifth Judicial District Court, Jefferson County. We consider the following issue:

¶2      ***Did the District Court err in denying Kopp's motion to dismiss pursuant to §§ 46-11-503 and -504, MCA?***

### FACTUAL AND PROCEDURAL BACKGROUND

¶3      The parties stipulated to the facts relevant to Kopp's motion to dismiss. On January 5, 2009, Kopp was cited with misdemeanor possession of drug paraphernalia, namely a spoon and baggies, found by Jefferson County Deputy Sheriff Shaun Gardner in a small blue bag in Kopp's possession. The next day, Kopp appeared before the Jefferson County Justice Court and pled guilty to the charge. Later that day, preliminary testing was performed in which residue in one of the baggies tested presumptively positive for methamphetamine. No testing was done on the liquid substance found in a syringe in the blue bag at that time. Deputy Gardner prepared an inventory report of the blue bag's contents indicating the syringe contained insulin. All of this evidence was sent to the state crime lab for testing, except for the syringe, which was mistakenly not sent.

¶4      In March 2009, the state crime lab reported that the residue on the spoon contained methamphetamine. The State charged Kopp in the District Court with criminal possession of dangerous drugs (methamphetamine), a felony, in violation of § 45-9-102,

MCA, based on the residue found on the spoon. Kopp filed a motion to dismiss pursuant to §§ 46-11-503 and -504, MCA, due to her prior conviction on the paraphernalia charge.

¶5 Deputy Gardner discovered the syringe had not been sent. He forwarded it to the crime lab for testing and, in May 2009, the lab reported the substance in the syringe tested positive for methadone.[1] The State moved for leave to amend the information from possession of dangerous drugs (methamphetamine) to possession of dangerous drugs (methadone), a felony, in violation of § 45-9-102, MCA. After leave was granted and the State filed an amended information, Kopp renewed her motion to dismiss under §§ 46-11-503 and -504, MCA, asserting possession of the blue bag and the entirety of its contents constituted a single transaction for which she had already been convicted.

¶6 The District Court conducted a hearing and denied the motion in a ruling from the bench. Kopp then entered an *Alford* plea to the charge, reserving the right to appeal the denial of her motion to dismiss. The District Court imposed a three-year deferred sentence to the Department of Corrections. Kopp appeals.

## STANDARD OF REVIEW

¶7 We review de novo a district court's decision on a motion to dismiss in a criminal case. *State v. James*, 2010 MT 175, ¶ 12, 357 Mont. 193, 237 P.3d 672 (citing *State v. Gazda*, 2003 MT 350, ¶ 10, 318 Mont. 516, 82 P.3d 20).

---

[1] Methadone is defined as an opiate, a Schedule II drug. *See* § 50-32-224(2)(o), MCA.

**DISCUSSION**

¶8     *Did the District Court err in denying Kopp's motion to dismiss pursuant to §§ 46-11-503 and -504, MCA?*

¶9     Kopp claims that the District Court erred by denying her motion to dismiss under § 46-11-504, MCA,[2] arguing that her conviction "was based on the same transaction as her prior conviction in justice court."[3] We have applied a three-part test to determine when a subsequent prosecution is barred under this provision:

> "(1) a defendant's conduct constitutes an offense within the jurisdiction of the court where the first prosecution occurred and within the jurisdiction of the court where the subsequent prosecution is pursued;
>
> (2) the first prosecution resulted in an acquittal or a conviction; and
>
> (3) the subsequent prosecution is based on an offense arising out of the same transaction [as that term is defined in § 46-1-202(23), MCA]."

*State v. Cech*, 2007 MT 184, ¶ 13, 338 Mont. 330, 167 P.3d 389 (quoting *State v. Tadewaldt*, 277 Mont. 261, 264, 922 P.2d 463, 465 (1996)). For a subsequent prosecution to be barred under § 46-11-504(1), MCA, all three factors must be met. *State v. Neufeld*, 2009 MT 235, ¶ 12, 351 Mont. 389, 212 P.3d 1063 (citing *Gazda*, ¶ 12). The

---

[2] Section 46-11-504, MCA, provides, in pertinent part:

> When conduct constitutes an offense within the jurisdiction of any state or federal court, a prosecution in any jurisdiction is a bar to a subsequent prosecution in this state if:
> (1) the first prosecution resulted in an acquittal or in a conviction and the subsequent prosecution is based on an offense arising out of the same transaction[.]

[3] As she did in the District Court, Kopp briefly references the Montana Constitution but does not develop constitutional arguments. The District Court clarified that "[w]e do not have a constitutional question. This is a statutory question, and the Court is limited in its analysis to those items."

4

statute "provides criminal defendants with greater protection against double jeopardy than the traditional double jeopardy 'elements' test set forth by the United States Supreme Court in *Blockburger v. United States* (1932), 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306." *Gazda*, ¶ 12 (citing *Tadewaldt*, 277 Mont. at 268, 922 P.2d at 467). The District Court denied Kopp's motion on the basis of factor three, concluding that the offenses here did not arise from the same transaction.[4]

¶10    "Same transaction" is defined, in relevant part, as "conduct consisting of a series of acts or omissions that are motivated by: (a) a purpose to accomplish a criminal objective and that are necessary or incidental to the accomplishment of that objective." Section 46-1-202(23), MCA. We have explained that "offenses arise from the same transaction when a defendant's underlying conduct of each prosecution is motivated by a purpose to accomplish the same criminal objective" and that the same transaction factor is not satisfied "when conduct charged in a subsequent prosecution is distinct from conduct charged in the initial prosecution." *Gazda*, ¶¶ 20, 21 (citing *State v. Sword*, 229 Mont. 370, 374, 747 P.2d 206, 208-09 (1987); *see also Tadewaldt*, 277 Mont. at 266-67, 922 P.2d at 466).

---

[4] Criminal possession of drug paraphernalia, codified at § 45-10-103, MCA, makes it "unlawful for a person to use or to possess with intent to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a dangerous drug." Under § 45-9-102(1), MCA, "a person commits the offense of criminal possession of dangerous drugs if the person possesses any dangerous drug, as defined in 50-32-101." "Possession" is defined in § 45-2-101(59), MCA, as "the knowing control of anything for a sufficient time to be able to terminate control."

¶11 Kopp argues that her offenses of possession of drug paraphernalia and possession of dangerous drugs arose out of the same transaction because they share the purpose, motivation, and criminal objective of possessing and using drugs. She argues that the contents of the blue bag formed the basis of both offenses and that her possession of paraphernalia was necessary and incidental to the criminal objective of ingesting a dangerous drug. She urges we reach the same result as in *Sword*. The State replies the charges are not part of the same transaction because Kopp's possession of paraphernalia was separate and distinct from her possession of dangerous drugs, arguing the paraphernalia had previously been used to ingest methamphetamine, while the syringe contained methadone to be used in the future by Kopp or another person. The State likens this case to our decision in *Tadewaldt*.

¶12 In *Sword*, we concluded that a Montana prosecution for making a false statement on a grizzly bear trophy license application arose out of the same transaction as the defendant's federal conviction for violating the Endangered Species Act of 1973. *Sword*, 229 Mont. at 371-72, 374, 747 P.2d at 207, 209. The defendant killed a grizzly bear in a wilderness area where grizzly bear hunting was prohibited and lied on his bear trophy license application about where he killed the bear. *Sword*, 229 Mont. at 371, 747 P.2d at 207. He pled guilty in federal court to violating the Endangered Species Act and was later charged in state justice court for subscribing to a materially false statement on the trophy license application. *Sword*, 229 Mont. at 371-72, 747 P.2d at 207. We considered the conduct underlying each offense and reasoned that the "false statements on his trophy

license application. . . . as well as his other acts were motivated and necessary or at least incidental to the accomplishment of the criminal objective of possessing, carrying, and transporting of a grizzly bear taken unlawfully." *Sword*, 229 Mont. at 374, 747 P.2d at 208-09; *see also James*, ¶¶ 6-9, 15 (concluding the charges of fleeing from or eluding a police officer and criminal endangerment, involving the same high-speed car chase, arose out of the same transaction because the "criminal objective--driving at high speed to elude capture--was the same as to each charge").

¶13     In *Tadewaldt* we concluded that the charge of criminal possession of dangerous drugs did not arise from the same transaction as the defendant's charge of driving under the influence (DUI). *Tadewaldt*, 277 Mont. at 267, 922 P.2d at 466. Upon defendant's arrest for DUI, several pills were found in his possession which were later identified as dangerous drugs, leading to a possession charge. *Tadewaldt*, 277 Mont. at 263, 922 P.2d at 464. After judgment was entered on the misdemeanor DUI charge, defendant moved to dismiss the possession charge. *Tadewaldt*, 277 Mont. at 264, 922 P.2d at 464. We distinguished *Sword*, reasoning the defendant's criminal objective for DUI was unrelated to his possession of dangerous drugs. *Tadewaldt*, 277 Mont. at 266-67, 922 P.2d at 466. We noted the defendant had completed his "criminal objective" of DUI before the drugs were found in his possession, and that the drugs "had not been ingested and did not contribute to Tadewaldt's impairment." *Tadewaldt*, 277 Mont. at 267, 922 P.2d at 466. We concluded that "in statutory terms, Tadewaldt's conduct in possessing the dangerous drugs was not motivated by a purpose to accomplish the 'criminal objective' of DUI, nor

7

was it necessary or incidental to that 'objective,'" and thus the defendant's conduct did not meet the definition of "same transaction" under the statute. *Tadewaldt*, 277 Mont. at 267, 922 P.2d at 466.[5]

¶14    Here, the District Court stated:

> I'm prepared to accept Defendant's argument that possession of paraphernalia . . . and possession of a syringe loaded with some unknown liquid . . . arguably could have had, the same criminal objective; but I do not believe that it is so perfectly apparent that it must have had the same criminal objective, that it will fall within the same transaction.
>
> .    .    .
>
> I don't think there is anything in the evidence -- notwithstanding the proximity of the items within this blue container -- that show that Defendant must have had the same state of mind, must have had the same intent, must have had the same purpose, must have had the same knowing conduct, to create the same criminal objective for a spoon and a baggie, that is, paraphernalia, as the syringe loaded with an unknown substance.

The court reasoned that "spatial proximity" was not "sufficient to ascertain whether there is the same criminal objective," and observed distinctions between the paraphernalia having "residue involving methamphetamine, and [] this previously unknown liquid now is ascertained to be methadone," further noting that "there is no evidence here that there was any needle, so that would suggest that this perhaps is not paraphernalia for purposes of ingesting." The court concluded "we're not dealing with the same transaction . . . notwithstanding that there was a previous conviction in connection with drug paraphernalia."

---

[5] In *State v. Condo*, 2008 MT 114, ¶ 14 n. 1, 342 Mont. 468, 182 P.3d 57, we explained that § 46-1-202(23), MCA, was codified under earlier code versions as subsection (22), as it was when *Tadewaldt* was decided.

¶15 We conclude the District Court did not err. The spoon and baggies which served as the basis for the paraphernalia charge had been used at the time of seizure, with residue thereon testing positive for methamphetamine. The syringe was full of a different drug, revealed upon testing to be methadone. The District Court noted there was no evidence of the presence of a needle to suggest the syringe itself was "paraphernalia for purposes of ingesting." Absent a connection between the paraphernalia with meth residue and the syringe full of methadone, these items supported separate charges that were not "necessary or incidental" to a single criminal objective. *Tadewaldt*, 277 Mont. at 267, 922 P.2d at 466. In the stipulated facts, Kopp summarized her motion as one "asserting possession of the blue bag and its contents constituted a single transaction for which she has already been convicted." However, as the District Court reasoned, the "spatial proximity" of these items within the blue bag is not sufficient, by itself, to connect these items in a single objective. Based on this record, we must conclude Kopp's possession of these items constituted separate criminal objectives.

¶16 We conclude that the charges do not fall within the meaning of "same transaction" under § 46-1-202(23)(a), MCA. Because all of the factors under the three-part test must be satisfied, we decline to address the parties' arguments relating to factor one, as factor three is dispositive of Kopp's argument under this issue.

¶17 Kopp also argues that her prosecution for possession of methadone is barred by § 46-11-503(1)(b), MCA. That section provides, in pertinent part:

> (1) When two or more offenses are known to the prosecutor, are supported by probable cause, and are consummated prior to the original

9

charge and jurisdiction and venue of the offenses lie in a single court, a prosecution is barred if:

. . .

(b) the former prosecution resulted in a conviction that has not been set aside, reversed, or vacated[.][6]

Section 46-11-503(1)(b), MCA.

¶18 The District Court denied Kopp's motion to dismiss under this provision on the grounds that neither the knowledge nor the probable cause elements had been satisfied. The court concluded that probable cause for possession of a dangerous drug in the syringe had not been established as of the first conviction because "nobody knew until the test was undertaken sometime later." The court further reasoned that the consideration of whether two or more offenses were known to the prosecutor was a subjective test and that "there isn't anything in the statute that refers to the officer's knowledge being transferred to the prosecutor, or officer's knowledge being charged to the State," concluding Kopp's arguments under this element were insufficient.

¶19 Kopp argues the elements of the statute were satisfied because the record indicates that Deputy Gardner believed he was investigating both offenses when he inventoried the contents of the blue bag and that this knowledge should be imputed to the prosecutor. The State argues that the statute does not bar the subsequent prosecution as the prosecutor did not know that Kopp had committed the offense of possessing dangerous drugs before

_____

[6] We referenced the knowledge element of this statute in *State v. Vargas*, 279 Mont. 357, 358-59, 928 P.2d 165, 166-67 (1996), where the defendant was charged with felony issuing bad checks, common scheme, after he had been convicted of misdemeanor issuing a bad check. However, we concluded that the defendant was raising a constitutional double jeopardy argument and had not relied upon the statutory provision. *Vargas*, 279 Mont. at 359, 928 P.2d at 167.

she pled guilty to the misdemeanor, pointing out that Deputy Gardner's report listed that the syringe contained insulin. The State further argues that, in any event, the statute does not provide that an officer's knowledge is imputed to the prosecutor.

¶20 Kopp pled guilty to misdemeanor possession of drug paraphernalia one day after she was cited for the misdemeanor, prior to any testing. Deputy Gardner inventoried the contents of the blue bag in a written report dated as delivered by the deputy on January 6, 2009, the same day that Kopp entered her plea to the misdemeanor charge. His report noted a "syringe of insulin," and the notations for type of offense included "PODP" (shorthand for possession of drug paraphernalia) and "PODD" (shorthand for possession of dangerous drugs). Kopp's argument is premised upon inferring that Deputy Gardner's knowledge that the substance in the syringe could have been dangerous drugs, presumably demonstrated by the notation in the report and prior to actual testing, should be imputed to the prosecutor, thus eliminating the prosecutor's ability to rely upon the report's statement that the substance in the syringe was insulin. However, this would defeat the plain meaning of the statute, which requires that "two or more offenses are known to the prosecutor . . . ." Section 46-11-503(1), MCA. The prosecutor did not know what the substances were until testing was conducted later. We conclude the District Court did not err in denying Kopp's motion under § 46-11-503(1)(b), MCA.

¶21 Affirmed.

/S/ JIM RICE

11

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ BRIAN MORRIS

Justice James C. Nelson, concurring.

¶22 I concur in the Court's decision to affirm the denial of Kopp's motion to dismiss. It was Kopp's burden, as the moving party, to support her motion with an adequate record. Kopp claimed in the District Court that her possession of drug paraphernalia and her possession of a dangerous drug were part of the "same transaction" under § 46-11-504(1), MCA. She asserted that this was "obvious" from the Stipulated Facts on which her motion was based. As the District Court noted, however, there are multiple plausible criminal objectives that Kopp may have had in possessing the methadone-filled syringe, which are not necessarily the same as her criminal objective (whatever it was) in possessing the spoon and the baggies containing methamphetamine residue. *See* § 46-1-202(23)(a), MCA (defining "same transaction" as "conduct consisting of a series of acts or omissions that are motivated by . . . a purpose to accomplish a criminal objective and that are necessary or incidental to the accomplishment of that objective"). The Stipulated Facts offer zero insight into what Kopp's criminal objective or objectives were. Hence, her motion was properly denied for failure to provide factual support for her claim.

/S/ JAMES C. NELSON

12